**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**David Alan McCLURE, a/k/a David
Wilson, Defendant-Appellant.**

No. 84–2166.

United States Court of Appeals,
Fifth Circuit.

April 15, 1986.

---

Timothy T. Read, Houston, Tex., David A. McClure, Lompoc, Cal., for defendant-appellant.

Jill Fisch, Atty., Dept. of Justice, Washington, D.C., Henry K. Oncken, U.S. Atty., James R. Gough, Susan L. Yarbrough, Ass't. U.S. Attys., Houston, Tex., Mervyn Hamburg, Atty., Appellate Section, Crim. Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before THORNBERRY, POLITZ, and RANDALL, Circuit Judges.

THORNBERRY, Circuit Judge:

McClure appeals his conviction under 18 U.S.C. § 1111 (1982) for first degree murder. He argues that an F.B.I. agent obtained a confession in violation of his *Miranda* and sixth amendment rights and that the district court erred in denying his motion to suppress the confession. He advances three other arguments for the first time on appeal. We do not reach the issues not raised before the district court, and we affirm the conviction.

## BACKGROUND

Lynette Thaxton was murdered on March 6, 1982 on Padre Island National Seashore. She was shot in the head with a .44 caliber magnum pistol. The F.B.I.'s investigation soon focused on David Alan McClure. McClure had spent about three weeks at Danny Lemond's apartment just prior to the murder. Lemond owned the gun with which Mrs. Thaxton was shot. Lemond dropped McClure off at the Thaxton house the day of the murder. Mrs. Thaxton's neighbor identified McClure as the man she had seen visiting Mrs. Thaxton the day of the murder. The neighbor's daughter saw the two drive away in Mrs. Thaxton's car. F.B.I. Special Agent John Newton learned that McClure left for San Diego on the day following the murder. He contacted the F.B.I. office in San Diego for assistance in locating McClure.

In October 1982, the San Diego office discovered that McClure was being held on unrelated felony burglary charges in the

San Diego County Jail. On October 18, Special Agent Kenneth Vardell approached McClure in the jail for an interview. Agent Vardell informed McClure he was investigating the murder of Lynette Thaxton. He also informed McClure of his *Miranda* rights. McClure agreed to talk and signed a waiver of his *Miranda* rights. McClure then confessed to the murder. He took the pen from Agent Vardell's hand and wrote "I killed her" on a note pad. The next day, the United States attorney filed a complaint against McClure. On October 20, Agent Vardell returned but McClure refused to talk with him. On October 22, the federal grand jury in Corpus Christi indicted McClure for the murder of Mrs. Thaxton in violation of 18 U.S.C. § 1111 (1982).

On June 21, 1983, the United States attorney filed an application for writ of habeas corpus ad prosquendum to secure the presence of McClure for trial in Corpus Christi. McClure was arraigned and received court-appointed counsel on July 11, 1983. The same day, McClure gave notice of his defense based on a mental condition and moved that he be committed for psychiatric evaluation. By order of the district court, McClure was committed to the Medical Center for Federal Prisoners at Springfield, Missouri. McClure underwent psychiatric evaluation there from August 10 until November 17, 1983.

On December 12, 1983, McClure moved for an independent psychiatric examination, for a pretrial hearing to determine his competency to stand trial, and to suppress the confession given to Agent Vardell. The district court ordered independent psychiatric evaluation of McClure. In mid-February 1984, McClure withdrew his motion for a pretrial competency hearing. After an evidentiary hearing, the district court found that McClure voluntarily, knowingly and intelligently waived his *Miranda* rights on October 18 and denied McClure's motion to suppress the confession.

McClure was tried before a jury in early March 1984. The jury found McClure guilty of murder in the first degree as charged in the indictment. The district court imposed the mandatory life sentence. McClure appeals, arguing that the district court erroneously concluded that his waiver of *Miranda* rights was voluntary, knowing and intelligent and therefore erred in denying the motion to suppress his confession. He also argues for the first time on appeal that his rights under the Speedy Trial Act and the sixth amendment were violated, that the admission of incriminating statements made to a fellow inmate constituted plain error, and that he received ineffective assistance of counsel. We conclude that McClure's waiver was voluntary, knowing and intelligent, and affirm his conviction. We do not reach the issues not raised before the district court.

## DISCUSSION

### I. Fifth Amendment Right

McClure first argues that his waiver of *Miranda* rights was invalid and therefore the district court erred in denying the motion to suppress his confession. *Miranda*, based on the fifth amendment right against compulsory self-incrimination, holds that incriminating statements made during custodial interrogations are not admissible unless the suspect is informed of his rights and freely decides to forego them. *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). A defendant may waive his rights conveyed by the *Miranda* warnings "provided the waiver is made voluntarily, knowingly and intelligently." *Id.* at 444, 86 S.Ct. at 1612. The heavy burden of proving a valid waiver rests on the government. *Id.* at 475, 86 S.Ct. at 1628. In *Moran v. Burbine*, —— U.S. ——, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), the Supreme Court outlined the proper analysis to determine whether the defendant effectively waived his rights:

> The inquiry has two distinct dimensions. First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the

right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Id.* at 1141.

A. Was the Waiver Voluntary?

After Agent Vardell informed McClure that the purpose of his visit was to question McClure about the murder of Mrs. Thaxton, he handed McClure an "Advice of Rights" form containing the standard *Miranda* warnings and instructed McClure to read it. Agent Vardell observed McClure's lips move as he read the form. He then instructed McClure to read aloud that portion of the form acknowledging that he understood his rights and agreed to waive them. Agent Vardell then asked McClure if he would talk to him about the murder of Mrs. Thaxton. When McClure agreed, Agent Vardell requested that McClure sign the waiver. McClure signed.

█ McClure does not suggest that Agent Vardell physically coerced him in any way. The only hint that the waiver of rights was involuntary was McClure's suggestion that he had agreed to talk with Agent Vardell in return for a promise of medical treatment. Agent Vardell denied promising McClure medical help but acknowledged offering McClure an aspirin during the interview. McClure admitted on cross-examination that he was not sure whether Agent Vardell made the promise before or after he had confessed. After hearing the testimony of both McClure and Agent Vardell, the district court made express findings that Agent Vardell was credible, McClure was not, and that Agent Vardell had made no promise of medical treatment. Because the district court had the opportunity to observe the demeanor of the witnesses, we defer to its credibility choices unless clearly erroneous. *United States v. Pozos,* 697 F.2d 1238, 1243 (5th Cir.1983); *United States v. Freeman,* 685 F.2d 942, 948 n. 3 (5th Cir.1982). We have reviewed the record of the suppression hearing and do not find that the district court's decision to credit Agent Vardell's testimony over that of McClure was clearly erroneous. We therefore agree with the district court that the government carried its burden of showing that, under the totality of the circumstances, McClure's waiver of *Miranda* rights was voluntary.

B. Was the Waiver Knowing and Intelligent?

McClure argues that his waiver of his *Miranda* rights was invalid because he was suffering from a mental illness and was under the influence of amphetamines on October 18, 1982. McClure called Dr. Thomas MacSpeiden and the United States called Dr. James Leach and Dr. James Plaisted to testify at the suppression hearing on McClure's capacity to knowingly and intelligently waive his rights. Each doctor also filed a psychological or psychiatric evaluation report.

Dr. MacSpeiden, a clinical psychologist, administered three hours of psychological testing to McClure on November 5, 1982, while McClure was in the San Diego County Jail. While Dr. MacSpeiden testified that McClure was functioning at the level of a borderline retardate during his examination, he acknowledged that a person can fake a low I.Q. Dr. MacSpeiden explained that he thought McClure understood the words on the "Advice of Rights" form but did not understand the full implications of waiving the rights on October 18. Dr. MacSpeiden further testified that McClure did understand the implications of waiving the rights just two days later when he refused to talk with Agent Vardell. Dr. MacSpeiden concluded that McClure was suffering from personality and mental disorders and that feelings of guilt internally coerced McClure to waive his rights and confess to the murder.

Dr. Leach, Chief of Forensic Psychiatry at the United States Medical Center for Federal Prisoners at Springfield, Missouri, testified that McClure was of above aver-

age intelligence and had the mental capacity to understand his rights and to waive them. Dr. Leach believed that McClure had deceptively answered questions during Dr. MacSpeiden's testing and had "faked out" Dr. MacSpeiden.

Dr. Plaisted, a clinical psychologist, administered four hours of psychological testing to McClure on January 26, 1984. Dr. Plaisted reported that at the commencement of the testing, McClure told him the results of previous testing should be disregarded because he had been angry and had attempted to give the impression of being mentally ill. Dr. Plaisted testified that, according to the tests he administered, McClure was capable of making a rational judgment in waiving his rights and confessing to the murder. Dr. Plaisted found that McClure functioned within the superior range of intelligence and stated that superior intelligence was very hard to fake. He concluded that McClure suffered from an antisocial personality disorder.

In addition, Agent Vardell testified that McClure was responsive to questions during the interrogation and appeared to be in his "right mind." Although Agent Vardell is no psychologist, he has been with the F.B.I. for eighteen years and testified that he has had vast experience dealing with all types of people. McClure's memory of the interrogation was selective. He testified that he did not remember signing the waiver, but he did "remember" Agent Vardell promising him medical treatment if he would talk.

Finally, McClure argues that his waiver was not knowing and intelligent because he was on amphetamines. But McClure did not manifest physical symptoms of drug intoxication to Agent Vardell. Agent Vardell noted that during the interrogation McClure told him he was not on drugs. Like the district court, we discount McClure's suggestion that he was under the influence of amphetamines.

■ We find that the district court's decision to credit the testimony of Dr. Plaisted and Dr. Leach over that of Dr. MacSpeiden is not clearly erroneous. Both Dr.

Plaisted and Dr. Leach testified that McClure functioned with above average intelligence and concluded that McClure understood his Miranda rights and the waiver of them. We note that Dr. Leach had the opportunity to observe McClure over the course of three months—a far lengthier period of exposure than that of either Dr. Plaisted or Dr. MacSpeiden. Although Dr. MacSpeiden's tests indicated that McClure was a borderline retardate, he acknowledged that McClure could have faked a low I.Q. Moreover, Dr. MacSpeiden believed that McClure had recovered from his serious mental disorder just two days after he had waived his Miranda rights and confessed. Such a speedy recovery from a severe mental disorder seems unlikely. Consequently, we agree with the district court that the government carried its burden of showing that, under the totality of the circumstances, McClure knowingly and intelligently waived his Miranda rights. Because the waiver was valid, the district court did not err in denying McClure's motion to suppress.

## II. Sixth Amendment Right

■ McClure also argues that his confession was obtained in violation of his sixth amendment right to counsel. The sixth amendment right to counsel, however, attaches only at or after the initiation of "adversary judicial proceedings" against the defendant. *Kirby v. Illinois*, 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972); *see also Moran*, 106 S.Ct. at 1145; *United States v. Gouveia*, 467 U.S. 180, 104 S.Ct. 2292, 2297–98, 81 L.Ed.2d 146 (1984). Adversary judicial proceedings may be initiated by way of "formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby*, 406 U.S. at 689, 92 S.Ct. at 1882; *see also Moran*, 106 S.Ct. at 1145; *Gouveia*, 104 S.Ct. at 2296. When McClure confessed to the murder on October 18, 1982, no complaint had been filed and no indictment had been returned; adversary judicial proceedings had not yet commenced against him in regard to the murder of Mrs. Thaxton. Because the con-

fession preceded the formal initiation of adversary judicial proceedings, we reject McClure's contention that his sixth amendment right to counsel was violated.

### III. Issues Not Raised Before the District Court

We do not reach McClure's arguments that his rights under the Speedy Trial Act, 18 U.S.C.A. §§ 3161–3174 (West 1985), and the sixth amendment were violated because they were not presented to the district court. *See United States v. Scallion*, 548 F.2d 1168, 1174 (5th Cir.1977) (observing that "[e]ven when the constitutional issue of a right to a speedy trial is involved, failure to raise it before or during trial has been held to waive the issue"), *cert. denied*, 436 U.S. 943, 98 S.Ct. 2843, 56 L.Ed.2d 784 (1978); *United States v. Tercero*, 640 F.2d 190, 195 (9th Cir.1980) (claim that delay constituted violation of Speedy Trial Act was not properly before appeals court when not first raised before district court), *cert. denied*, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1982). Nor do we exercise our discretion to review whether admission of incriminating statements made to a fellow inmate constituted plain error. Fed.R.Crim.P. 52(b); *United States v. Parker*, 722 F.2d 179, 183 n. 2 (5th Cir.1983) ("Whether a question will be resolved for the first time on appeal is a matter of discretion of the courts of appeal."). Nor do we reach McClure's contention that he received ineffective assistance of counsel. *See United States v. Freeze*, 707 F.2d 132, 138 (5th Cir.1983) ("The general rule in this circuit is that a claim of inadequate representation cannot be determined on direct appeal when the claim has not been raised before the district court."). Resolution of the speedy trial and ineffective assistance of counsel issues requires further factual development in the district court. We affirm McClure's conviction without prejudice to his right to raise his statutory and constitutional arguments in a proper proceeding pursuant to 28 U.S.C. § 2255 (1982).

### CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.