**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Tommy Ray HIGDON, Defendant-Appellant.**

No. 86–1895
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 2, 1987.

Jeff Elliott, Texarkana, Tex., (court-appointed), for Higdon.

Marvin Collins, U.S. Atty., Terence J. Hart, Sidney Powell, Asst. U.S. Atty., Dallas, Tex., for U.S.

Before REAVLEY, RANDALL and JOLLY, Circuit Judges.

RANDALL, Circuit Judge:

A jury convicted Tommy Ray Higdon of conspiracy to rob and of robbery of a federally insured savings and loan in violation of the federal Bank Robbery Act. Higdon appeals both convictions, alleging that he received ineffective assistance of counsel at

trial in violation of the sixth amendment to the United States Constitution. With respect to the robbery conviction only, Higdon further alleges that the record contains insufficient or no evidence of a taking "by force and violence, or by intimidation," as is required under the Bank Robbery Act.

Because we cannot evaluate Higdon's sixth-amendment claims on the record before us, we dismiss that portion of Higdon's appeal without prejudice to his right to raise the issue in a habeas corpus proceeding. However, we find ample evidence of "intimidation" in the record and, therefore, we affirm Higdon's conviction under the Bank Robbery Act.

## I.

On the afternoon of May 6, 1986, North Park Savings & Loan in Dallas, Texas was robbed. The robber, wearing a long-sleeved jacket, sunglasses and a fisherman's hat as a disguise, entered the savings and loan, hurriedly approached Sharon Russell's teller window, and ordered her to "[p]ut the money in the bag." The robber carried a white plastic bag, which he threw on the counter in front of Russell. When Russell did not respond, the robber reiterated, "I said put the money in the bag." This time Russell complied with the robber's instructions, emptying her cash drawer of bills and activating a surveillance camera in the process.

The robber next told Russell to open the bank vault. Russell replied that the vault was locked and that she did not have a key. Apparently accepting Russell's explanation, the robber moved to the next teller window and ordered teller Lori Dudek to "hurry and put the money in the bag." Dudek complied, attempting to place bills and rolled coins from her drawer into the bag. The robber told Dudek, "No rolled coins." He then ordered the two women to lie on the floor and told them not to "dare" to get up. Each teller testified that she complied with the robber's orders out of fright. However, both women testified that they saw no gun or other weapon and that the robber did not verbally threaten them with physical harm. Leaving Russell

and Dudek lying on the floor, the robber escaped from the savings and loan with $6,821.00.

During the investigation by the Federal Bureau of Investigation which followed the robbery, Tommy Ray Higdon was identified as the robber. Not only did both tellers independently pick Higdon from a photographic line-up of six men of comparable description, but Higdon's accomplice and "get away" driver, William Walter Howard, confessed to his own role in the robbery and detailed Higdon's actions as well. Further, both tellers and Howard positively identified Higdon at trial.

The jury convicted Higdon on both the conspiracy and the robbery charges. The court sentenced Higdon to five-year and twenty-year consecutive terms for the conspiracy and robbery convictions, respectively. Higdon appeals both convictions on the sixth-amendment issue of inadequate representation, but challenges only the robbery conviction with his sufficiency of the evidence arguments.

## II.

Higdon asserts that he was denied effective assistance of counsel in violation of the sixth amendment to the United States Constitution because his trial attorney failed to append a supporting affidavit to Higdon's motion for new trial. The motion alleged in relevant part that, at the time of co-conspirator Howard's appearance before the court and while testifying, Howard was taking drugs supplied by government agents. According to the motion for new trial, the drugs not only affected Howard's recall of events, but they also subjected Howard unduly to the influence of the federal agents—and thereby deprived Higdon of a fair trial. Although the trial court denied Higdon's motion for new trial, it did so without prejudice to Higdon's right to file an amended motion. However, Higdon's attorney never filed any amended motion for new trial.

■ The general rule in this circuit is that a claim of ineffective assistance of counsel cannot be resolved on direct appeal

when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations. *United States v. McClure,* 786 F.2d 1286, 1291 (5th Cir.1986); *United States v. Freeze,* 707 F.2d 132, 138–39 (5th Cir.1983). We have undertaken to resolve claims of inadequate representation on direct appeal only in rare cases where the record allowed us to evaluate fairly the merits of the claim. *See, e.g., United States v. Phillips,* 664 F.2d 971, 1040 (5th Cir.1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982); *United States v. Brown,* 591 F.2d 307, 310 (5th Cir.), *cert. denied,* 442 U.S. 913, 99 S.Ct. 2831, 61 L.Ed.2d 280 (1979). This is not one of those rare cases. Here, we can only speculate on the basis for defense counsel's actions—both in failing to attach an affidavit in support of Higdon's motion for new trial and in failing to file an amended motion for new trial once the trial court had noted the deficiency. Accordingly, we decline to address the merits of Higdon's ineffective assistance claim, but we do so without prejudice to Higdon's right to raise the issue in a proper proceeding pursuant to 28 U.S.C. § 2255. *See McClure,* 786 F.2d at 1291; *Freeze,* 707 F.2d at 139; *United States v. Rodriguez,* 582 F.2d 1015, 1016 (5th Cir.1978).

### III.

Higdon next challenges the sufficiency of the evidence underlying his robbery conviction under the Bank Robbery Act, 18 U.S.C. § 2113(a) (1982). In determining the proper standard of review, we note that, although defense counsel moved for acquittal [1] at the conclusion of the government's case-in-chief, counsel failed to renew the motion at the conclusion of all the evidence and thereby waived objection to denial of the motion. Therefore, we must review Higdon's conviction on his sufficiency of the evidence point only for a "manifest miscarriage of justice." Fed.R.Crim.P. 29(a); *United States v. Osgood,* 794 F.2d 1087, 1093 (5th Cir.), *cert. denied,* —— U.S. ——,107 S.Ct. 596, 93 L.Ed.2d 596 (1986); *United States v. Gammage,* 790 F.2d 431, 435–36 (5th Cir.1986). Further, in reviewing a challenge to the sufficiency of the evidence supporting a criminal conviction, we must consider the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and we will not reverse unless no reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt. *Freeze,* 707 F.2d at 135.

Turning to Higdon's sufficiency claim, we note that Higdon limits his sufficiency argument to lack of evidence of a taking "by force and violence, or by intimidation," an element of the crime under 18 U.S.C. § 2113(a).[2] The requirement of a taking "by force and violence, or by intimidation" under section 2113(a) is disjunctive. The government must prove only "force and violence" or "intimidation" to establish its case. *United States v. Atkins,* 698 F.2d 711, 715 (5th Cir.1983); *United States v. Jacquillon,* 469 F.2d 380, 386 (5th Cir. 1972), *cert. denied,* 410 U.S. 938, 93 S.Ct. 1400, 35 L.Ed.2d 604 (1973). We must affirm Higdon's robbery conviction even upon a finding of intimidation alone. Thus, the threshold issue before us is the definition of a taking "by intimidation" under the Bank Robbery Act.

Higdon asserts that section 2113(a) of the Bank Robbery Act is not implicated absent an express threat of bodily injury

---

**1.** We treat defense counsel's motion for an instructed verdict as a motion for acquittal under Rule 29(a), Fed.R.Crim.P.

**2.** The Bank Robbery Act reads in relevant part as follows:

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control,

management, or possession of, any bank, credit union, or any savings and loan association; ...

\* \* \* \* \* \*

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a) (1982) (amended November 10, 1986).

during the robbery, either by display of a weapon or by verbal threats. We disagree. As used in section 2113(a), intimidation means "to make fearful or to put into fear." *Jacquillon,* 469 F.2d at 385. When Congress codified federal criminal statutes under Title 18 in 1948, it substituted the phrase "by intimidation" for the phrase "by putting in fear," which had appeared in the predecessor statute. *See* 12 U.S.C. § 588b(a) (1940). Courts have characterized this language modification as a technical rather than a substantive change. *United States v. Robinson,* 527 F.2d 1170, 1172 n. 2 (6th Cir.1975). Additionally, the dictionary definition of "intimidate"—"to make timid or fearful; inspire or affect with fear; *esp.* to compel to action or inaction (as by threats),"—indicates that the substituted term is synonymous with the supplanted phrase, "putting in fear." *Webster's Third New International Dictionary* (1976). *See also Black's Law Dictionary* (5th ed. 1979) ("unlawful coercion; extortion; duress; putting in fear"); *Unabridged Oxford English Dictionary* (1983) ("to render timid, inspire with fear"). We conclude that neither the plain meaning of the term "intimidation" nor its derivation from a predecessor statute supports Higdon's argument that a taking "by intimidation" requires an express verbal threat or a threatening display of a weapon. *Accord United States v. Robinson,* 527 F.2d 1170, 1172 (6th Cir.1975).

■ Under the definition of intimidation that we first set forth in *Jacquillon* and which we reaffirm here, "to make fearful or to put into fear," intimidation results when one individual acts in a manner that is reasonably calculated to put another in fear. Thus, from the perspective of the victim, a taking "by intimidation" under section 2113(a) occurs when an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts. *Accord Robinson,* 527 F.2d at 1172. *See also United States v. Ferreira,* 821 F.2d 1, 6 n. 8 (1st Cir.1987) (an act that "would place an ordinary person in fear of bodily harm"); *United States v. Bingham,* 628 F.2d 548, 549 (9th Cir.1980), *cert. denied,* 449 U.S. 1092, 101

S.Ct. 888, 66 L.Ed.2d 820 (1981) (an act that "would place an ordinary person in fear of bodily harm"); *United States v. Alsop,* 479 F.2d 65, 67 (9th Cir.1973) (an act that "would put an ordinary, reasonable person in fear of bodily harm"). Under this test, the subjective courageousness or timidity of the victim is irrelevant; the acts of the defendant must constitute an intimidation to an ordinary, reasonable person. *See Robinson,* 527 at 1171; *Alsop,* 479 F.2d at 67. Thus, actual fear need not be proven if the acts of the defendant would threaten an ordinary, reasonable person.

Higdon asserts that, in evaluating his sufficiency claim, we must disregard Dudek's and Russell's testimony of their fear during the May 6 robbery. Higdon argues that evidence of an individual victim's fear will not support an objective finding of intimidation. Again, we disagree. Evidence that Higdon's acts did induce fear in an individual victim *is* probative of whether his acts were objectively intimidating. It is the jury's unique role to evaluate the victim's temperament, to determine from her demeanor the weight to be given her testimony, and, ultimately, to decide whether the defendant's acts reasonably would induce fear in an ordinary person standing in the victim's shoes. In this case, it was for the jury to evaluate the demeanor of Dudek and Russell and, knowing that Higdon's acts had induced fear in these two individuals, to decide whether the same acts would intimidate an ordinary, reasonable person in the same circumstances.

■ We think that the record is replete with evidence of a taking "by intimidation." Higdon's actions—from his insistent demands that the tellers empty their cash drawers under circumstances calculated to engender fear and surprise in banking personnel, to his scarcely-veiled threat of some unarticulated reprisal should the two victims "dare" to get up from the floor—were pungent with intimidation. Even we, who must rely on a dry, appellate record, can discern the aggressive, coercive nature of Higdon's terse and pointed orders to the savings and loan tellers. Further, Higdon's posture in the surveillance photo-

graphs, which are exhibits in the case, exudes an aggressive, threatening presence as he leans over the teller counter and, with his right hand, demands compliance by his gestures. We do not doubt that a jury reasonably could infer from the testimony of Russell and Dudek that the fear which they expressed reasonably resulted from the acts, the statements and the very posture of Higdon while robbing the bank.[3] Other courts have upheld a taking "by intimidation" under similar or less compelling circumstances. *See, e.g., United States v. Hopkins,* 703 F.2d 1102 (9th Cir. 1983) (no threats and unarmed); *United States v. Slater,* 692 F.2d 107 (10th Cir. 1982) (no threats and unarmed); *United States v. Robinson,* 527 F.2d 1170 (6th Cir.1975) (no express threat or display of weapons); *see also United States v. Epps,* 438 F.2d 1192 (4th Cir.1971); *United States v. Brown,* 412 F.2d 381 (8th Cir. 1969).

Because the record contains ample evidence upon which a jury could determine that Higdon robbed North Park Savings & Loan "by intimidation," we reject Higdon's insufficient and no evidence claims. We find no miscarriage of justice in the record before us.

### IV.

We AFFIRM Higdon's conviction without prejudice to his right to raise the issue of ineffective assistance of counsel in a proper proceeding under 28 U.S.C. § 2255.

---

The record contained some evidence that Higdon carried a loaded gun during the robbery, including co-conspirator Howard's testimony that Higdon admitted pulling back his jacket to reveal the gun to the tellers. Neither teller could have seen the attempted display of the gun because the teller counters were too high,

and, in fact, both tellers denied seeing a weapon. Although this evidence clearly was relevant to Higdon's intent to intimidate, we need not decide whether it was also probative of whether a taking "by intimidation" occurred in fact since the record is sufficient without this evidence to uphold Higdon's conviction.