924 F.2d 1053
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leroy ROBINSON, Defendant-Appellant.
 No. 90-5750.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 4, 1990.
Decided Feb. 1, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis, III, District Judge. (CR-89-215-A)
 David Thomas Williams, William B. Cummings, P.C., Alexandria, Va., for appellant.
 Paul George Cassell, Assistant United States Attorney, Alexandria, Va., (argued), for appellee; Henry E. Hudson, United States Attorney, Mark J. Hulkower, Assistant United States Attorney, Alexandria, Va., on brief.
 E.D.Va.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before ERVIN, Chief Judge, BUTZNER, Senior Circuit Judge, and WILLIAM M. NICKERSON, United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Leroy Robinson appeals his convictions on three counts of bank robbery by "intimidation" in violation of 18 U.S.C. Sec. 2213(a). The issue is whether there was sufficient evidence to sustain the convictions on the counts of robbery by intimidation. This Court affirms the convictions on the first two counts, and reverses the third.
 
 I.
 
 2
 On June 1, 1989, agents of the FBI arrested Robinson. On June 26, 1989, a grand jury returned an indictment charging him with one count of bank robbery by intimidation. On August 7, 1989, the grand jury returned a superseding indictment, charging Robinson with three additional bank robberies and conspiracy to commit all four. On October 4, 1989, a jury found Robinson guilty of conspiracy to commit bank robbery by intimidation, in violation of 18 U.S.C. Sec. 371 and guilty of three substantive charges of robbery (Counts 3, 4, and 5). Robinson was acquitted on the remaining charge of robbery by intimidation (Count 2).
 
 
 3
 On December 8, 1989, the court sentenced Robinson. The convictions for Counts 1 and 5 were governed by the Sentencing Guidelines. Robinson received concurrent sentences of 210 months on these counts. On Counts 3 and 4, noting that Robinson was eligible for parole, the court imposed concurrent sentences of 84 months, to run consecutively to the sentences on Counts 1 and 5. Robinson appealed to this Court on December 11, 1989.
 
 II.
 
 4
 There are three bank robberies relevant to this appeal: the Ameribanc incident (Count 3), the First Virginia Bank incident (Count 4), and the Fredericksburg S & L incident (Count 5).
 
 A.
 
 5
 On June 19, 1987, Robinson entered the Ameribanc in Stafford, Virginia. Robinson is a large man, standing approximately six feet, two inches tall and weighing about 230 pounds, with a muscular build. He was wearing a knit cap (with eye holes) over his head and yellow latex gloves. Robinson vaulted over the bank counter with his shoe hitting the top. He stood on the counter for an instant, then jumped into the small teller area. All of the tellers were afraid and, consequently, huddled together.
 
 
 6
 Robinson then started taking money out of two drawers. He tried to shake loose the lower drawer where most of the money was kept, but was unable to get into it. He ran around, saying in a low, well spoken voice, "Well, where is it at? I know it's supposed to be here," or words to that effect. Janet Dixon, the teller closest to Robinson, was afraid that if she did not cooperate he would become "violent." All of the other tellers were "too afraid to answer," so Dixon explained that there was a cash drawer where Robinson was looking. Robinson then jumped back over the counter top and left the bank, escaping with about a thousand dollars.
 
 B.
 
 7
 Later that same day, Robinson and an accomplice robbed the First Virginia Bank in Falls Church, Virginia. Robinson walked through the door with a mask over his face and wearing yellow latex gloves. The bank manager screamed. Robinson then proceeded behind the teller counter and began yanking open all the drawers. While taking the cash, Robinson told the tellers "not to say anything and to sit down be quiet and nobody would get hurt."[1] The tellers did as directed and sat on the floor. The robber came as close as twelve inches to the tellers. He then left the bank, although the tellers were too scared to get up to see his exit.
 
 C.
 
 8
 On May 23, 1989, Robinson and a partner pulled up in a car in front of the Fredericksburg S & L in Fredericksburg, Virginia. Robinson walked into the bank wearing a ski mask and yellow latex gloves. He then went behind the teller counter, where several tellers were working, and began taking money. When he found an empty drawer he would shake it, asking the tellers in a well spoken voice, "Where is the money? Where's the money?" When teller Cecilia Ann Schlotter tried to pull her keys out of her cash drawer, he said "put those back." After Robinson had taken cash from her, she went into one of the other bank offices because she was "scared to death" and "panic-stricken." Robinson kept demanding a vault key from the tellers behind the counter, so employee Dorothy Rutledge came out of her office. She showed him that there was nothing in the vault. Robinson carried out the robbery, according to Rutledge, through the "concern and fright of [the tellers'] being hurt."
 
 
 9
 While removing the bills, Robinson tripped a concealed silent alarm. The police responded. Upon hearing the siren, Robinson ran from the bank with $5,200. He was arrested and taken into custody nine days later.
 
 III.
 
 10
 The sufficiency of the above evidence must be evaluated under a standard of review that "allow[s] the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Trevant, 677 F.2d 1018, 1021 (4th Cir.1982) (citations omitted), cited in United States v. MacDougall, 790 F.2d 1135, 1151 (4th Cir.1986), and United States v. Jones, 735 F.2d 785, 791 (4th Cir.), cert. denied, 469 U.S. 918 (1984). Thus, the scope of review is "narrow" for sufficiency of evidence. United States v. Bice-Bey, 701 F.2d 1086, 1090 (4th Cir.1983). Under this standard, the evidence is sufficient for the Ameribanc and First Virginia Bank robbery convictions. The evidence, however, is insufficient for the Fredericksburg conviction.
 
 IV.
 
 11
 This Court articulated a two-tiered standard for the finding of taking by intimidation in violation of 18 U.S.C. Sec. 2213(a) in United States v. Wagstaff, 865 F.2d 626 (4th Cir.1989). At the first step, it is required that "a defendant's conduct must be 'reasonably calculated to produce fear.' " 865 F.2d at 627-28 (quoting United States v. Amos, 566 F.2d 899, 901 (4th Cir.1977); United States v. Harris, 530 F.2d 576, 579 (4th Cir.1976)). To surmount the second tier, it must be established that "an ordinary person in the [bank] teller's position reasonably could infer a threat of bodily harm from the defendant's acts...." 865 F.2d at 627-28 (quoting United States v. Higdon, 832 F.2d 312, 315 (5th Cir.1987) (citations omitted) (emphasis in original), cert. denied, 484 U.S. 1075 (1988)). The second step of the Wagstaff test is objective. Thus, "the subjective courageousness or timidity of the victim is irrelevant; the acts of the defendant must constitute intimidation to an ordinary, reasonable person." 865 F.2d at 628 (quoting United States v. Higdon, 832 F.2d at 315.
 
 
 12
 The Wagstaff test, premised on the intentional behavior of the defendant and the perception of bodily harm by a reasonable person, rejected the more subjective United States v. Slater, 692 F.2d 107 (10th Cir.1982), standard which relied heavily on perceptions of the robbery victim. The Slater analysis is implicitly relied upon by the government to argue that Robinson's physical presence and posture were sufficiently intimidating to support convictions for all the robberies.
 
 
 13
 In Slater, the unmasked and unarmed defendant walked into a savings and loan. Id. at 107-08. He then proceeded behind the teller counter and began taking money. Id. He said little during the robbery beyond telling a bank manager to "shut up" when she inquired what he was doing. Id. While no one was harmed during the robbery, the personnel testified that they were very afraid. Id. at 108.
 
 
 14
 The Slater court found that the defendant's "forceful and purposeful" acts constituted "aggressive behavior which very well could have been considered as intimidating by the jury." Id. at 109. The court reasoned that the defendant's acts "obviously created a dangerous situation." Id. Moreover, the court surmised that the defendant "relied on the surprise and fear of the bank personnel."
 
 
 15
 This Court found the Slater analysis flawed in that it would appear to read the intimidation requirement out of 18 U.S.C. Sec. 2213(a). 865 F.2d at 628. We stated that it was "hard to imagine" a theft that could not be characterized as "forceful," "purposeful," and "aggressive." Id. Moreover, any face-to-face theft would create a "dangerous situation." Id. at 629. What distinguished any theft from the particular variety described by the statute is the absence of a "reasonable fear of bodily harm based on the acts of the defendant." Id. (emphasis in original). The rejection of the Slater analysis by Wagstaff indicates that if mere aggressive, forceful, and purposeful behavior is not statutorily sufficient for intimidation, then Robinson's "large, muscular" physical presence, alone, is not either. Clearly the tellers were frightened by Robinson's tall muscular presence during all the robberies. Robinson's physical appearance alone, while perhaps threatening, is not intentional behavior.
 
 A.
 
 16
 Conversely, in the Ameribanc incident the defendant's vaulting of the teller counter and landing near the employees is behavior a jury could rationally find was "reasonably calculated to produce fear." Robinson may have used his physical size to instill fear by leaping atop the counter and then jumping down near the tellers.
 
 
 17
 At least one circuit has found that jumping over a bank counter is statutorily sufficient intimidation. In United States v. Lucas, the Tenth Circuit found a robber's leap over a teller counter to be intimidating conduct under the statute. 619 F.2d 870, 871 (10th Cir.1980). The robber in Lucas also used an obviously toy gun, but the court relied on the defendant's conduct to uphold the conviction. Id.
 
 
 18
 Robinson argues that his conduct was nonintimidating as he made no threats,[2] neither brandished or suggested that he had a weapon, and did not use a note. Nevertheless, a jury could reasonably find the defendant's counter vault, alone, to be intimidation calculated to produce fear. For these reasons, the evidence is sufficient to support the Count 3 conviction.
 
 B.
 
 19
 During the robbery of the First Virginia Bank, Robinson said to the tellers, in effect, "not to say anything and to sit down and be quiet and nobody would get hurt." The defendant's statement is analogous to the bank robbery note in United States v. Epps, 438 F.2d 1192 (5th Cir.1971). In an appeal on the grounds of insufficiency of evidence, the court found that a robbery note, instructing the tellers to "[p]ut all your money in this bag and nobody will get hurt," sufficient to support a jury's finding of intimidation under 18 U.S.C. Sec. 2113(a). Robinson's comment is similar to that of Epps', in that the thin assurance of the statement's latter half is premised on the latent threat of the earlier portion. Robinson suggests that Epps is inapposite because he, unlike the defendant Epps, did not use a note. Nevertheless, Robinson's preference for the spoken word over the written hardly distinguishes his threat or case from Epps. Accordingly, the conviction on Count 4 is affirmed.
 
 C.
 
 20
 Unlike the First Virginia Bank robbery, in the Fredericksburg Savings and Loan incident the defendant did not make a threat. He did inquire in a "low, well spoken" voice, "Where's it at? " as he searched through the teller drawers. The government suggests that Robinson, like the robbery defendant in United States v. Higdon, "exud[ed] an aggressive, threatening presence," which the court found to be statutorily sufficient intimidation. 832 F.2d at 315-16. Unlike Higdon, Robinson did not exhibit such a "presence as he lean[ed] over the teller counter and ... demand[ed] compliance with his gestures." Id. Moreover, this Court's rejection of the Slater analysis in Wagstaff demonstrates that Robinson's physical presence, alone, does not constitute an intimidating act. Finally, while the Higdon court based its affirmance of the jury's finding of intimidation on the defendant's threat,[3] Robinson made no such threat. Thus, the conviction on Count 5 is reversed, and the case is remanded for the entry of an order by the district court vacating that conviction and sentence.
 
 IV.
 
 21
 We affirm Counts 3 and 4, but given the twofold Wagstaff requirement of intentional behavior that would produce a reasonable fear of bodily harm, the conviction on Count 5 must be reversed.
 
 
 22
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 The transcript indicates that this statement is the witness' paraphrase of Robinson's comments
 
 
 [2]
 The defendant did inquire in a "low, well spoken" voice words to the effect "Where is the money?", "Where is it at?", and "I know its supposed to be here."
 
 
 [3]
 The defendant Higdon ordered two bank tellers to lie on the floor and not "dare" get up