IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 13, 2008

Charles R. Fulbruge III
Clerk

No. 07-60884

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

RAY ANTHONY CHANEY, also known as Ray Anthony Bradley, also
known as Ray Chaney, also known as Ray A Chaney, also known
as Ray N Bradley

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:07-cr-00012-LG

Before DAVIS, STEWART, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Defendant Ray Anthony Chaney ("Chaney") appeals from his conviction,
following a jury trial, on three counts relating to the theft and possession of a
firearm. Chaney argues the district court erroneously permitted the
Government's introduction of a firearm into evidence without a sufficient basis
for determining its authenticity. Chaney additionally argues his trial counsel

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

was ineffective for failing to offer evidence to rebut "the Government's key witness." For the reasons stated below, we AFFIRM the district court's evidentiary ruling and decline to address the undeveloped ineffective assistance claim.

## I. BACKGROUND FACTS

A Kel-Tec assault rifle was stolen from "Guns & Ammo," a Moss Point, Mississippi, firearms store on July 7, 2005. Upon discovering that the firearm was missing from the store, the store's owner, Randy Weaver, a federally licensed firearms dealer, immediately reported the theft to the Moss Point Police. At approximately the same time, the Moss Point Police received a report of a man carrying a firearm at a local residence (referenced at trial as the "Frederick Street residence"). Officers responded to both the dealer's store and the residence.

Upon arriving at the Frederick Street residence, Patrolman Dale Smith of the Moss Point Police Department saw cars in the driveway, one of which was a Nissan Sentra. Patrolman Smith testified at trial that he saw Chaney exit the rear passenger area of the Sentra "with a sheet covering what appeared to be a weapon -- a rifle of some type." Patrolman Smith and another officer followed Chaney behind the residence and, when they got to the rear of the house, the officers saw Chaney proceeding back towards the Nissan Sentra. Also at the rear of the house, the officers saw a white sheet with computer speakers wrapped inside, as well as a rifle lying beside the sheet. The officers arrested Chaney and Patrolman Smith was instructed by his superior to stay with the rifle. He testified that the rifle had a "Guns & Ammo" sales tag on it. Patrolman Smith testified that the rifle he guarded after the incident was the same rifle that was in the photographs and in the courtroom. Thereafter, Detective David Lawson of the Moss Point Police Department retrieved and photographed the rifle.

While those officers were at the Frederick Street residence, Detective Zrondia Hartfield of the Moss Point Police Department responded to Weaver's store. While interviewing Weaver, Detective Hartfield testified that she received a radio call from another officer stating that a firearm had been recovered at the Frederick Street residence. Via radio, she verified that the firearm had the same serial number as the firearm Weaver reported stolen. Detective Hartfield collected the store's surveillance camera tapes and returned to the police department, where she observed the rifle collected from the Frederick Street residence and noted that it still had a "Guns & Ammo" tag attached to it.

Officers took photographs of Chaney immediately after the arrest that showed him wearing a distinctive baseball cap with a diamond patch on the front. Those photographs were admitted into evidence at trial. Detective Lawson testified that the defendant was wearing the same baseball cap in the Guns & Ammo surveillance tape as he was wearing in the booking photos. Patrolman Smith testified the person he saw exiting the Nissan Sentra with the sheet and rifle was wearing "[d]ark clothing and a dark ball cap," which was consistent Chaney's appearance on the store surveillance tape and in the post-arrest photographs. Patrolman Smith also testified that Chaney was the person he saw exiting the Nissan Sentra and in possession of the rifle.

At trial, the Government introduced the Kel-Tec rifle into evidence. As noted above, Detective Lawson testified that, as part of processing the rifle, he took a photograph of the rifle's serial number. That serial number matched the serial number of the weapon Weaver testified was stolen from his store. Detective Lawson also testified that he did not attempt to lift fingerprints from the weapon because it had a textured surface, making it unsuitable for fingerprint testing. Detective Lawson returned the weapon to Weaver on the same day as the incident. Weaver testified that law enforcement did not give

him any special instructions with respect to the returned rifle. He put the rifle on display for sale.

The firearm did not look exactly the same when introduced at trial as it did on the day it was stolen. Patrolman Smith testified that he identified the rifle under the sheet during his initial encounter with Chaney because of its sight -- which had been removed by the time of trial. Special Agent Joe Belisle of the federal Bureau of Alcohol, Tobacco, and Firearm was qualified as an expert in the field of identification and manufacture of firearms. He provided the necessary evidence demonstrating the rifle's connection to interstate commerce. Agent Belise also testified that the rifle met the statutory definition of a "firearm." To reach his conclusions, Agent Belise testified that he personally examined the rifle by picking it up from Weaver's store. He testified that the firearm had some rust areas that were not apparent at the time it was stolen because, while in the ATF's custody, the rifle was exposed to moisture during Hurricane Katrina. Agent Belise also testified that the rifle as introduced into evidence was missing a magazine and barrel extender with accompanying sight, because he let Weaver keep those items while Agent Belise was examining the weapon. Agent Belise then described those missing items for the jury.

On February 22, 2007, a federal grand jury indicted Chaney on three counts: (1) stealing or unlawfully taking a firearm from a federally licensed firearms dealer in violation of 18 U.S.C. § 922(u); (2) possession of a stolen firearm in violation of 18 U.S.C. § 922(j); and (3) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The jury returned a guilty verdict on all three counts. The district court sentenced Chaney to terms of 120 months imprisonment as to counts one and two, and a term of 235 months imprisonment

as to count three, all to run concurrently, in addition to a term of supervised release and a special assessment. Chaney filed a timely notice of appeal.[1]

## II.   DISCUSSION

### A.   Admission of the Firearm

The parties do not dispute that the Kel-Tec assault rifle introduced at trial was the same rifle stolen from the Guns & Ammo store. In that respect, the rifle's authenticity is not at issue. Instead, Chaney argues the rifle was materially altered such that it was rendered inadmissible at trial and that the district judge consequently erred in permitting its admission. We disagree.

As an initial matter, the parties agree that defense counsel did not object to the admission of the Kel-Tec rifle at trial and that we should therefore only review the district court's evidentiary ruling for plain error. Under the plain error standard, we first ask whether the district court committed an "error" that is "plain" and that affects substantial rights. United States v. Reyna, 358 F.3d 344, 350 (5th Cir. 2004). "If those criteria are met, we have the discretion to correct the forfeited error but should do so only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Id. (alteration in original) (quoting United States v. Olano, 507 U.S. 725, 732 (1993)).

"[A] trial judge may admit physical evidence if he is satisfied that in reasonable probability the article has not been changed in any important respect from its original condition." United States v. Albert, 595 F.2d 283, 290 (5th Cir. 1979). "Factors to be considered in making this decision include the nature of the article, the circumstances surrounding its custody, and the likelihood of others tampering with it." Id. at 290 n.14. This determination is committed to the district court's "broad discretion." See United States v. Daughtry, 502 F.2d 1019, 1022-23 (5th Cir. 1974).

---

[1] Chaney does not appeal the district court's sentencing decisions.

In support of his argument, Chaney points to various ways that the rifle changed between the robbery and trial, namely that the sight was absent at trial, that it had been in Weaver's possession for approximately two months, and that the rifle suffered some water damage as a result of Hurricane Katrina. However, not every change to a piece of physical evidence renders it inadmissible at trial: only changes "in any important respect from its original condition" will call the item's admissibility into question. Albert, 595 F.2d at 290. The presence of rust, its possession by Weaver, and the absence of a magazine and sight did not affect the jury's ability to determine whether the rifle was a "firearm," undoubtedly an important issue at trial. Moreover, there is no reason to believe those changes affected the rifle's serial number, which was the primary method for determining that the rifle introduced at trial was the same weapon stolen from Guns & Ammo and recovered from the Frederick Street residence.

Chaney further argues that, without the barrel extender and accompanying sight, the jury could not test the veracity of Patrolman Smith's testimony. Specifically, Patrolman Smith testified he saw Chaney carrying something wrapped in a sheet, which he identified as a rifle because of its distinctive sight. The jury was capable of considering this issue despite the missing sight. "Unless persuaded the evidence is too unreliable -- matter which is too likely to induce speculation or to introduce the likelihood of more prejudice than probative weight -- the [district judge] should permit the jury to consider the evidence for what it is worth." Daughtry, 502 F.2d at 1023. Aside from the rifle (sans barrel extender and sight), the jury had photographs taken of the weapon on the day of the robbery, as well as Patrolman Smith's and Agent Belise's testimony describing the missing sight. Those witnesses were available for cross-examination. Thus, we cannot conclude that the rifle was so unreliable that the district judge abused his discretion in permitting the jury to conduct its own evaluation of the evidence. Additionally, even if the district judge

committed some error in permitting the rifle's admission without the barrel extender and sight, we cannot conclude in light of the other testimony and evidence regarding the sight and establishing Chaney's guilt that the rifle's admission was plain error, affected Chaney's substantial rights, or seriously affected the fairness of the proceedings such that reversal is warranted.

Finally, the district court did not err in permitting the rifle's introduction at trial despite the nearly two months that it was in Weaver's possession. "Any break in the chain of custody affects the weight, not the admissibility of evidence. Thus, if the district court correctly finds that the government has made a prima facie showing of authenticity, then the evidence is admissible, and issues of authenticity are for the jury to decide." United States v. Johnson, 68 F.3d 899, 903 (5th Cir. 1995) (internal citations omitted). Chaney does not dispute that the Government made a prima facie showing of authenticity. Accordingly, Weaver's possession of the rifle was a matter for the jury to consider and did not affect the rifle's admissibility.

B.    Ineffective Assistance of Counsel

Chaney next argues that his trial counsel was constitutionally ineffective in his treatment of Patrolman Smith's testimony. Patrolman Smith testified at trial that he saw Chaney exit the Nissan Sentra and run behind the Frederick Street residence; Chaney claims there was available evidence that Patrolman Smith previously stated that he only saw Chaney come from behind the Nissan Sentra and walk to the rear of the Frederick Street. Chaney asserts trial counsel provided ineffective assistance by failing to develop this inconsistency in order to discredit Patrolman Smith's testimony.

"We do not usually review claims of ineffective assistance of counsel on direct appeal, because the record is rarely sufficiently developed to enable appellate review." United States v. Cothran, 302 F.3d 279, 285 (5th Cir. 2002). In this case, we have no evidence concerning counsel's reasons for not

impeaching Patrolman Smith's testimony using the purportedly contradictory evidence. Such evidence is generally required to evaluate whether counsel provided ineffective assistance. See Strickland v. Washington, 466 U.S. 668, 689 (1984) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). Thus, we do not address the merits of Chaney's ineffective assistance claim because this is not one of the "rare cases" where the record is sufficiently developed to permit resolution of the claim. See United States v. Andrews, 22 F.3d 1328, 1345 (5th Cir. 1994); United States v. Higdon, 832 F.2d 312, 314 (5th Cir. 1987). This decision is without prejudice to Chaney's right to raise the claim in proceedings under 28 U.S.C. § 2255. See Cothran, 302 F.3d at 285; Higdon, 832 F.2d at 314.

## III. CONCLUSION

For the foregoing reasons, we affirm the defendant's conviction and decline to consider his ineffective assistance of counsel claim.

AFFIRMED.