**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 91-1745

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CLIFFORD POLLARD TURNER,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

April 30, 1992

Before POLITZ, Chief Judge, REYNALDO G. GARZA and WIENER, Circuit Judges.

POLITZ, Chief Judge:

Clifford Pollard Turner appeals his conviction upon jury verdict of three counts of causing to be delivered by the United States Postal Service a written communication containing a threat in violation of 18 U.S.C. § 876. For the reasons assigned, we affirm.

Background

On October 2, 1990 three Black Texas state judges[1] received letters from Turner as follows:

To the Honorable Judge,                    10-01-90

[Name of State Judge:]                     Monday

                    "TO WHOM IT MAY CONCERN"

        Now, Comes <u>Again</u> the "Lone Aryan Warrior" With the Message of <u>Death</u> to all Nigger's And Jew's who do not Submit to our Aryan Supreme Race!
        All lower Race's <u>Must</u> Submit to our Aryan Race and Ready theirself's to Except our Nationalist Socialist Government, which will Come to Power Over this Zog (Zionist Occupational Government)-United States of America Government that Is In Power At this time, And/or they will be Executed!
        All found to Be Member's And/or Associates of Any Racial Organization's Such as the NAACP, ANC (African National Congress)-And, Any Jewish Foundation's Will Be Executed Without Question!  You have been Warned to disassociate With Any Such, Now!
                    "<u>Beware</u> You Were told!'

                                "For Race and Nation"
                                <u>Heil Hitler</u>!
[swastika symbol]               Clifford P. Turner


Turner is currently incarcerated in the Clemens Unit of the Texas Department of Corrections, serving two concurrent 30-year terms for aggravated sexual abuse and burglary of a habitation.  He also stands convicted of the possession in a penal institution of a deadly weapon.  Turner is a member of the SS Action Group and subscribes to the beliefs of white supremacy and national socialist government.  All three of the handwritten letters were identical with the exception of the name of the judge to whom the letter was

---

[1]      Judge  Larry Baraka, Judge Carolyn Wright, and Judge Berlaind L. Brashear.

2

addressed.

Upon closure of the government's case Turner moved for a judgment of acquittal. The motion was denied. After the jury returned verdicts of guilty Turner renewed his motion for judgment of acquittal and it was again denied. He was sentenced to 46 months imprisonment and timely appealed, assigning as error the refusal to give requested jury charges on the definition of a threat, allowing use of his prior conviction for impeachment, and the disallowance of his motions for acquittal.

Analysis

I.   Jury Instructions

Turner argues that the trial court abused its discretion by not allowing two of his proposed jury instructions defining threat under 18 U.S.C. § 876.[2]

The trial court charged the jury as follows:

---

[2]   A person violates 18 U.S.C. § 876 by writing a threatening letter and knowingly causing it to be deposited in the United States mails. **United States v. DeShazo**, 565 F.2d 893 (5th Cir.), cert. denied, 435 U.S. 953 (1975); **United States v. Lincoln**, 589 F.2d 379 (8th Cir. 1979). 18 U.S.C. § 876 states in pertinent part:

> Whoever knowingly so deposits or causes to be delivered as aforesaid, any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

3

A "threat" is a serious statement expressing an intention to inflict bodily injury upon someone, which under the circumstances would cause apprehension in a reasonable person, as distinguished from words used as mere political argument, idle or careless talk, exaggeration, or something said in a joking manner. It is not necessary to prove that the Defendant actually intended or was able to carry out the threat made.

It is not necessary to prove that the Defendant actually wrote the communication. What the government must prove beyond a reasonable doubt is that the Defendant knowingly caused to be delivered by the United States Postal Service a written communication containing a "threat" as defined in these instructions.

Turner's attorney had proposed two different instructions regarding the definition of "threat." The first declined instruction stated:

A "threat" must be distinguished from constitutionally protected speech. Because the alleged crime here rests solely on the basis of a written communication, it must be interpreted against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks upon government and public officials. If the Defendant's only offense here is a crude offensive method of making a political statement, then his communication is not a "threat" prohibited by 18 USC §876.

The second declined instruction stated:

The jury should remember in deciding whether the letters at issue contain a "threat" or constitutionally protected speech, that the mere advocacy of the use of force or of law violations, without more, does not remove a statement from the bounds of constitutionally protected speech. The constitutional guarantees of free speech and free press do not permit the government to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action. The mere abstract teaching of the moral propriety or even moral necessity for a resort to force and violence is not the same as preparing a group for violent action and steeling

4

it to such action.  Therefore, even if the letters at issue advocate a use of force, unless they express an imminent intent to inflict injury to the person of the addressee or another, they do not contain a "threat" prohibited by 18 USC §876.

We review the decision to refuse the requested jury instructions under the abuse of discretion standard, affording the trial judge substantial latitude in tailoring her instructions. **United States v. Rochester**, 898 F.2d 971 (5th Cir. 1990).  The refusal to deliver a requested instruction will constitute reversible error only if the instruction requested:

> (1) is substantively correct; (2) was not substantially covered in the charge actually delivered to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense.

**United States v. Mollier**, 853 F.2d 1169, 1174 (5th Cir. 1988).

The instruction given to the jury by the trial judge was modeled closely after the Fifth Circuit's Pattern Jury Instructions for criminal cases[3] and is a correct statement of the law.  See **DeShazo** at 894; **Lincoln** at 381; and **United States v. Carvin**, 555

---

[3]     The Fifth Circuit Pattern Jury Instructions for criminal cases involving 18 U.S.C. § 876 states in pertinent part:

> A "threat" is a serious statement expressing an intention to . . . inflict bodily injury upon someone, which under the circumstances would cause apprehension in a reasonable person, as distinguished from idle or careless talk, exaggeration, or something said in a joking manner . . .

> It is not necessary to prove that the defendant actually wrote the communication.  What the government must prove beyond a reasonable doubt is that the defendant mailed or caused to be mailed a communication containing a "threat" as defined in these instructions.

5

F.2d 1303 (5th Cir.), cert. denied, 434 U.S. 971 (1977). It adequately and fairly covered the issues presented in the case. The charges requested by the defendant appear to be more a statement of the case than an accurate definition of threat. **Mollier** at 1175. We therefore conclude that the trial court did not abuse its broad discretion in refusing defendant's proposed jury instructions.

II. <u>Prior Felony Convictions</u>

Turner moved *in limine* to prevent the government from using prior felony convictions for impeachment purposes under Federal Rule of Evidence 609(a) absent prior approval of the court. The trial judge granted this unopposed motion. During the trial, immediately after the direct examination of Turner, the government informed the court and defense counsel, out of the jury's presence, that it intended to establish on cross-examination that Turner had been convicted of three felony offenses: aggravated sexual abuse, burglary of a habitation, and possession of a deadly weapon in a penal institution. The trial court ruled, over the objection of Turner's attorney, that the prejudice of the evidence did not outweigh the probative value as it related to the issue of Turner's credibility. The government was allowed to cross-examine Turner regarding these prior felony convictions. Turner contends that this was error. We do not agree.

Federal Rule of Civil Procedure 609(a) permits the impeachment of a testifying defendant with evidence of prior convictions

punishable by death or imprisonment in excess of one year, provided the court first determines that the probative value of admitting the evidence outweighs its prejudicial effect. **United States v. Melton**, 883 F.2d 336 (5th Cir. 1989). The trial court is extended broad discretion in its application of this test, **United States v. Martinez**, 555 F.2d 1273 (5th Cir. 1977). The weighing must be a matter of record. **United States v. Preston**, 608 F.2d 626 (5th Cir. 1979), cert. denied, 446 U.S. 940 (1980).

The trial court made an on-the-record finding and concluded that the prejudice of Turner's former convictions did not outweigh their probative value. Of particular importance, the trial judge gave an explicit limiting instruction to the jury, restricting the prior convictions to impeachment and distinguishing this evidence from substantive evidence of guilt. We find no abuse of discretion on the part of the trial court regarding the use of Turner's prior felony convictions.

III. <u>Motion for Acquittal-Renewed Motion for Acquittal After Jury Verdict.</u>

After the close of the government case, Turner moved for a judgment of acquittal on all counts, pursuant to Federal Rule of Criminal Procedure 29, arguing that the language contained in the three letters were not "threats" under 18 U.S.C. § 876 but, instead, were political statements protected from prosecution by the first amendment of the constitution. The trial court denied this motion. After being properly instructed by the trial court the jury deliberated, found that threats had been made, and

7

returned a verdict of guilty on all three counts. Turner filed a Renewed Motion for a Judgment of Acquittal After Jury Verdict which repeated the arguments contained in his earlier motion. This motion was also denied. Turner argues that the trial court erred in these rulings. We are not persuaded.

In reviewing a motion for judgment of acquittal, we "consider the evidence as a whole taken in the light most favorable to the Government, together with all legitimate inferences to be drawn therefrom to determine whether a rational trier of fact[4] could have found guilt beyond a reasonable doubt." **United States v. Geer**, 923 F.2d 892, 894 (1st Cir. 1991); see also **United States v. Calkins**, 906 F.2d 1240 (8th Cir. 1990); **United States v. Valles-Valencia**, 811 F.2d 1232 (9th Cir. 1987).

Turner specifically targeted his "Message of Death" to three Black judges, threatening that "Niggers and Jews" and those associated with them face execution at the hands of the "Lone Aryan Warrior" and other members of the "Aryan Supreme Race." The plain language of the letters was sufficient to cause "a reasonable recipient, familiar with the context of the communication, [to] interpret it as a threat." **Martin v. United States**, 691 F.2d 1235, 1240 (8th Cir. 1982), cert. denied, 459 U.S. 1211 (1983); **Carvin** at

---

[4]    Whether or not the language contained in Turner's letters constitutes a "threat" is an issue of fact for the jury. **Lincoln** at 381; **United States v. Maisonet**, 484 F.2d 1356 (4th Cir. 1973), cert. denied, 415 U.S. 933 (1974).

8

1305.[5]

Upon completion of an independent examination of the entire record, viewing the evidence, as required, in the light most favorable to the verdict, we conclude that the essential elements of the crime could have been found proven beyond a reasonable doubt by a rational trier of fact.  See **Lincoln** at 382; **Carvin** at 1305.  Thus, the verdict and the trial court's denial of Turner's Motion for Acquittal and Renewed Motion for a Judgment of Acquittal After Jury Verdict were proper.

AFFIRMED.

---

[5]     The reactions of the recipients of the letters lends weight to the jury's conclusion that the letters contained "threats."  Judge Baraka purchased a Beretta 9mm. semi-automatic pistol and enrolled in a program with the Sheriff's office to learn how to use the weapon.  Judge Brashear bought a .38 caliber pistol and a burglar alarm.  Judge Sanders varied her residence, the automobile she drove, began carrying a phone with her, and discontinued working late night hours.  Two of the three judges sealed the envelopes in plastic to preserve fingerprints, and all three reported the letters to the police.  See **Lincoln**.