# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-50409

United States Court of Appeals
Fifth Circuit

**FILED**
September 2, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

  Plaintiff–Appellee,

v.

WISSAM ALLOUCHE, also known as Wissam Ismail Allouche, also known as Wissam I. Allouche,

  Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:13-CR-420

Before STEWART, Chief Judge, and PRADO and SOUTHWICK, Circuit Judges.

PER CURIAM:*

  Defendant–Appellant Wissam Allouche was convicted of unlawfully procuring citizenship by making false statements about his marriage in violation of 18 U.S.C. § 1425(b) and of making a materially false statement on a security clearance application in violation of 18 U.S.C. § 1001. The district

---

  * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

court sentenced him to sixty months' imprisonment and revoked his U.S. naturalization and citizenship pursuant to 8 U.S.C. § 1451(e). On appeal, Allouche raises eleven issues challenging these convictions and his sentence. We address one of these issues below: whether the district court reversibly erred by refusing to give Allouche's proposed jury instruction regarding Section 316 of the Immigration and Naturalization Act ("INA") and an exception to its residency requirements for certain government employees and contractors. Because we find that the district court did not err, we affirm. Having reviewed the other challenges raised by Allouche on appeal and finding no error, we also affirm as to those issues not discussed herein.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Allouche was born in Beirut, Lebanon, in 1968. In the early 1980s, he joined an organization called the Amal Militia. The Amal Militia was founded in the 1970s and was associated with Shia Muslims in Lebanon. In the early days of the Amal Militia, its members were trained at terrorist camps run by the Palestine Liberation Organization. Dr. Matthew Levitt, an expert on counterterrorism and intelligence, testified that "Amal was engaging in the types of case[s], textbook case study actions that you would describe as terrorism."

During his time in the Amal Militia, Allouche was trained in the use of assault weapons, rocket-propelled grenades ("RPGs"), and explosives. After joining the Amal Militia, Allouche fought against Israel in the 1982 Lebanese-Israeli War. Allouche was captured and held as an Israeli prisoner of war ("POW") for eighteen to twenty-four months.

After being released from Israeli custody, Allouche rejoined the Amal Militia in Lebanon. Allouche stated that upon rejoining the Amal Militia he was given command of approximately 200 fighters in Deir Al Zahrani, a city in southern Lebanon. Allouche left Lebanon in 1987 and went to Germany.

No. 15-50409

Jennifer Danko, Allouche's ex-wife, testified that she met Allouche in 1997 while she was stationed in Germany. Danko is a lieutenant colonel in the U.S. Army Medical Services Corps. Danko and Allouche were married roughly a year and a half after they met. In 2002, Danko was transferred from Germany to Fort Sam Houston in San Antonio, Texas. Allouche accompanied Danko to San Antonio. In 2006 or 2007, Allouche took a job as a private contract interpreter for the U.S. military. While Allouche worked alongside U.S. military personnel, he was never in the U.S. military. According to Danko, Allouche left for Iraq in April or May of 2007.

In December 2007, Danko filed for a divorce from Allouche. Later that month, Danko served Allouche with divorce papers while he was back in the United States from Iraq. According to Danko's petition for divorce and Allouche's counterpetition, they separated and ceased living together in December 2007.

Eric Holman, an Immigration Services Officer, testified that he interviewed Allouche in 2006 regarding his application for citizenship. Holman testified that Allouche applied for citizenship under Sections 316 and 319 of the INA, 8 U.S.C. §§ 1427, 1430.

Section 316 provides in relevant part that a permanent resident alien may obtain citizenship if (1) after being lawfully admitted, he or she has continuously resided in the United States for at least five years immediately preceding the filing of the application, has been physically present in the United States for at least half of that time, and has resided in the state or district of the United States where the application was filed for at least three months; (2) he or she has continually resided "within the United States from the date of the application up to the time of admission to citizenship"; and (3) the person is "of good moral character." 8 U.S.C. § 1427(a).

Section 319 provides in part that a permanent resident alien who is

3

No. 15-50409

married to a U.S. citizen may obtain citizenship if, "during the three years immediately preceding the date of filing his application," he or she "has been living in marital union with the citizen spouse." 8 U.S.C. § 1430(a). Pursuant to 8 C.F.R. § 319.1(b)(1), "marital union" means that the applicant must "actually reside[] with his or her current spouse." This regulation also provides that "[a] person is ineligible for naturalization as the spouse of a United States citizen under section 319(a) of the [INA] if, before or after the filing of the application, the marital union ceases to exist due to death or divorce," and that "legal separation" "break[s] the continuity of the marital union required for purposes of this part." *Id.* § 319.1(b)(2)(i)–(ii).

Holman testified that when Allouche initially applied for citizenship under Section 319, he and his supervisor told Allouche that he did not qualify under Section 319 because his wife had been deployed overseas and as a result they had not resided together as required. Holman also testified that he advised Allouche that if he left the United States to work overseas, he would not qualify for citizenship under Section 316. In 2008, Allouche's application was denied.

After his first application for citizenship was denied, Allouche applied a second time. Stanley Shaffer, an Immigration Adjudication Officer, testified that he conducted Allouche's immigration interview in January 2009 regarding his second application. Shaffer stated that the application was signed under penalty of perjury and, as is standard procedure, Allouche was placed under oath for the interview. According to Shaffer, Allouche testified under oath that he had been living with his wife, Jennifer Danko, for the prior three years. Allouche did not disclose that he and Danko had not lived together since 2007, that she had filed for divorce, or that they had separated. Shaffer also testified that Allouche did not tell him that he had lived outside the United States since June 2007 while working as a translator in Iraq. Finally, Shaffer testified that

4

No. 15-50409

Allouche answered "No" both orally and in writing to the question: "Have you ever been a member of or in any way associated either directly or indirectly with a terrorist organization." Allouche did not disclose that he had been a member of the Amal Militia. According to Shaffer, had Allouche answered any of these questions honestly, he would have been disqualified from obtaining U.S. citizenship.

In 2009, Allouche applied for security clearance. Dempsie Fuqua, a security clearance background investigator with the Office of Personnel Management, testified that he was assigned to investigate Allouche's application. Fuqua testified that on his SF-86 security clearance application form, Allouche answered "No" to the question whether he had "ever participated in militias, not including official state government militias, or paramilitary groups." Allouche again did not disclose his prior membership in the Amal Militia. Fuqua also noted that Allouche did not disclose his Lebanese citizenship on the form as required.

Special Agent James Moss, an Army counterintelligence officer who served on the FBI's Joint Terrorism Task Force, testified that he was assigned to investigate Allouche in 2010. Special Agent Moss stated that through the course of the investigation, he and his colleagues discovered several pieces of information indicating that Allouche may have been engaged in espionage against the United States. Specifically, Special Agent Moss said that they discovered that despite the fact that Allouche was never a member of the U.S. military, he had created or obtained a U.S. Army uniform that was adorned with Special Forces insignia and identified him as holding the rank of major. Special Agent Moss explained that this was worrisome because it would have potentially allowed Allouche to gain access to military facilities at Fort Sam Houston.

Special Agent Moss testified that they also discovered that while

5

No. 15-50409

Allouche was serving as a contract interpreter in Iraq, he had altered his Department of Defense authorization letter. On the altered letter, Allouche changed his job title; changed his citizenship from German to American; stated that he had Top Secret security clearance, despite actually having no clearance; changed his job level from GSE-12 to GSE-14; and changed his weapons authorization from no weapons to being allowed to carry a weapon. Special Agent Moss also testified that they learned Allouche had fabricated another identification letter in which he changed his status from GSE-12 to GSE-14 and said that he had Top Secret security clearance.

Special Agent Moss stated that as part of the investigation into Allouche, they decided to launch an undercover operation in which Moss posed as a U.S. Army intelligence officer who was trying to recruit Allouche for a "special project." Special Agent Moss contacted Allouche and then met with him several times at various locations around San Antonio. Many of these meetings were recorded and monitored by other law enforcement officers.

In one taped conversation, Allouche told Special Agent Moss that he had been a member of the Amal Militia and that he had been trained at camps in Lebanon, Syria, and Algeria on the use of assault weapons, RPGs, explosives, and sniper rifles. He also recounted his capture and how he was held as an Israeli POW, and stated that after he was released he assumed command of about 200 Amal Militia fighters in southern Lebanon.

In May 2013, Allouche was indicted by a federal grand jury. Count I charged Allouche with unlawfully procuring citizenship in violation of 18 U.S.C. § 1425(b) for failing to disclose his prior involvement in a terrorist organization. Count II charged that Allouche unlawfully procured citizenship in violation of 18 U.S.C. § 1425(b) by making false statements regarding his marriage. Count III charged that Allouche had violated 18 U.S.C. § 1001 by

No. 15-50409

falsely stating on a federal security clearance form that he had not been a member of a nonstate militia.

Prior to trial, Allouche submitted his proposed jury instructions. In a supplemental proposed instruction, Allouche requested that the jury be instructed about an exception to the residency requirements for citizenship eligibility under Section 316 of the INA for certain government employees and contractors. The district court refused to give his proposed supplemental instruction.

After a nine-day trial, a jury acquitted Allouche as to Count I and convicted him as to Counts II and III. Allouche was sentenced to sixty months' imprisonment and stripped of his U.S. naturalization and citizenship pursuant to 8 U.S.C. § 1451(e). This appeal followed.

## II.    DISCUSSION

While Allouche raises eleven issues on appeal, we address only his challenge to the district court's jury instructions.

Count II charged that Allouche (1) was "a person not entitled to naturalization and citizenship" (2) who "knowingly procured and obtained, and attempted to procure and obtain naturalization and citizenship" (3) "by falsely stating . . . that he and his wife were married and living together for the last three years, when in truth and actuality, . . . they had not lived together since May 2007 and [Allouche's wife] filed for divorce . . . on December 7, 2007."

Allouche argues that since he "was entitled to naturalization under Section 316 of the INA, codified at 8 U.S.C. § 1427, the jury should have been instructed regarding the requirements of naturalization under that section and the applicable exceptions." According to Allouche, "[h]ad the jury been properly instructed in this regard, it would have acquitted [him] of Count Two, because the Government did not prove that [he] was not entitled to naturalization."

## A.     Standard of Review

"We afford the district courts substantial latitude in formulating the jury instructions and review a district court's refusal to give a requested jury instruction for abuse of discretion." *United States v. Smithson*, 49 F.3d 138, 142 (5th Cir. 1995) (citing *United States v. Chaney*, 964 F.2d 437, 444 (5th Cir. 1992)). In reviewing a district court's instructions, we "consider whether the charge, as a whole, was a correct statement of the law and whether it clearly instructed the jurors as to the principles of the law applicable to the factual issues confronting them." *United States v. Wright*, 634 F.3d 770, 774 (5th Cir. 2011) (quoting *United States v. Santos*, 589 F.3d 759, 764 (5th Cir. 2009)). We will reverse on the basis of an abuse of discretion "only if the requested instruction (1) was a substantially correct statement of the law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the defendant's ability to present a given defense." *Id.* at 775 (quoting *Cooper Indus., Inc. v. Tarmac Roofing Sys., Inc.*, 276 F.3d 704, 714 (5th Cir. 2002)).

## B.     Analysis

Prior to trial, Allouche requested that the district court instruct the jury that individuals who are employed by, or are under contract with, the U.S. Government in certain positions may be exempted from meeting Section 316's residency requirements. Specifically, Allouche requested that the jurors be told:

> To obtain citizenship pursuant to Title 8, Code of Federal Regulations, Section 316, an applicant is required to establish that he has resided continuously in the United States for a period of five years after having been lawfully admitted for permanent residence, and to have resided in the district having jurisdiction over the applicant's actual place of residence for at least thirty days immediately before the filing of the application or

examination of the application. A form N-470 can be filed to preserve residence for naturalization purposes and will relieve an applicant from any applicable required period of physical presence if employed by or under contract with the U.S. Government, as is the case with Interpreters and Translators for the United States Military. As such, if you determine that the defendant, as a permanent resident, maintained continuous residency for five years prior to filing his application for naturalization and was not physically present in the U.S. due to employment by contract with the U.S. Government immediately before the filing or examination of his application, then the Defendant was entitled to Naturalization.

The district court did not give this instruction. Because Allouche's proposed instruction was not a substantially correct statement of the law, we conclude that the district court did not abuse its discretion.

Allouche's proposed instruction sought to instruct the jury about an exception to one of Section 316's requirements without first instructing the jury about any of the requirements themselves. Rather, it makes only a passing cursory reference to some, but not all, of Section 316's elements. Such an instruction would not only have been incomplete, but would have posed a substantial risk of misleading and confusing the jury. The requested instruction's failure to fully inform the jury about the relevant law justifies the district court's refusal to give this proposed instruction. *See United States v. DeStefano*, 59 F.3d 1, 4 (1st Cir. 1995) ("[T]he law is settled that a trial court may appropriately refuse to give a proffered jury instruction that is . . . incomplete in some material respect.").

Allouche's proposed instruction, however, was not merely incomplete; it was also incorrect. The proposed instruction sought to direct the jury that

if you determine that the defendant, as a permanent resident, maintained continuous residency for five years prior to filing his application for naturalization and was not physically present in the U.S. due to employment by contract with the U.S. Government

immediately before the filing or examination of his application, then the Defendant was entitled to Naturalization.

Put simply, this is not true. Under Section 316, Allouche would not have been eligible for naturalization and citizenship only by virtue of having satisfied the residency requirements. In addition to the residency requirements, Section 316 requires that the applicant be "of good moral character." 8 U.S.C. § 1427(a). Allouche's proposed instruction, however, omitted this element, and probably for good reason. The INA provides: "No person shall be regarded as, or found to be, a person of good moral character who . . . has given false testimony for the purpose of obtaining any benefits under this chapter." 8 U.S.C. § 1101(f). As Stanley Shaffer stated at trial, Allouche falsely testified under oath at his immigration interview that he had been living with his wife for the past three years. And given that under Count II, the jury convicted Allouche of lying about his marriage to obtain citizenship, there is good reason to believe that had the jury been fully instructed regarding Section 316, including the "good moral character" element, it would not have found that he was eligible for citizenship under that provision.

Allouche's proposed instruction also misstates the duration that he was required to have resided within the state or district where his application was filed. According to Allouche's requested instruction, he must only have "resided in the district having jurisdiction over the applicant's actual place of residence for at least thirty days immediately before the filing of the application or examination of the application." Section 316, however, actually provides that the applicant must have "resided within the State or within the district of the Service in the United States in which the applicant filed the application *for at least three months*." 8 U.S.C. § 1427(a) (emphasis added). Allouche provides no explanation for this discrepancy.

No. 15-50409

Finally, this case is similar to *United States v. Turner*, 960 F.2d 461 (5th Cir. 1992), in which the defendant challenged the district court's refusal to give his requested instruction regarding the definition of a "threat." *Id.* at 464. There, we held that the district court did not abuse its discretion in rejecting the proposed instruction where it was "more a statement of the case than an accurate definition of [the law]." *Id.* This principle applies equally here. Allouche's proposed instruction is much closer to a summary of his theory of innocence than an accurate and complete description of the law. As such, like we held in *Turner*, the district court did not abuse its discretion by refusing to deliver the instruction to the jury.

## III.   CONCLUSION

For the foregoing reasons, we affirm.

11