# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10915

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

v.

WAYMON SCOTT MCLAUGHLIN,

    Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

October 2, 2018

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 4:16-CR-212-1

Before DENNIS, CLEMENT, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

Waymon Scott McLaughlin was indicted on six counts of bank robbery by intimidation, in violation of 18 U.S.C. § 2113(a). A jury convicted McLaughlin of four of the six counts of bank robbery by intimidation. McLaughlin was sentenced to four concurrent terms of 188 months of imprisonment based, in relevant part, on enhancements for his aggravating role in counts five and six. McLaughlin now appeals his conviction and

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-10915

sentence. Specifically, McLaughlin argues that the district court erred in instructing the jury, in admitting as an exhibit a photograph of his ear, in denying his motion to suppress the robbery note, and in calculating his sentence. As set forth below, we disagree with each of these arguments and therefore AFFIRM McLaughlin's conviction and sentence.

## I.     BACKGROUND

McLaughlin was indicted on six counts of bank robbery by intimidation, in violation of 18 U.S.C. § 2113(a). The superseding indictment charged McLaughlin with robbing five FDIC-insured banks in the Fort Worth area a total of six times between December 2015 and May 2016. McLaughlin pleaded not guilty and proceeded to a jury trial.

McLaughlin filed a pre-trial motion to suppress, *inter alia*, a robbery note that was found in a FedEx envelope he was carrying immediately prior to his lawful May 2016 arrest, claiming that the envelope was obtained from a sealed medical envelope during a warrantless search. Following an evidentiary hearing, the district court denied McLaughlin's motion to suppress, finding that the search of the envelope was lawful as both a search incident to arrest and as an inventory search. Additionally, prior to trial, McLaughlin argued that the Government's "newly produced" exhibit, a photograph of his ear, should be excluded because it violated the court's scheduling order and prejudiced McLaughlin's ability to prepare his defense. The district court overruled McLaughlin's objection, admitting Government's Exhibit 83.

At trial, the jury heard evidence of all six charged bank robberies. The jury found McLaughlin not guilty as charged in counts one and two of the superseding indictment; but found McLaughlin guilty as charged in counts three, four, five, and six of the superseding indictment. Having overruled McLaughlin's objection to the aggravating role enhancement, the district court sentenced McLaughlin within the guidelines to 188 months imprisonment for

2

## No. 17-10915

all four counts, each term to run concurrently. McLaughlin now challenges his conviction and sentence on the grounds discussed below.

## II.    DISCUSSION

### A. *Jury Instructions*

McLaughlin appeals the district court's denial of his proposed jury instruction that stated, "to take 'by means of intimidation' means the defendant used force or threatened to use force."[1] Because McLaughlin preserved the issue on appeal, we "review [the] district court's denial of [McLaughlin's] proffered jury instruction for abuse of discretion," affording the district court "substantial latitude in formulating jury instructions." *United States v. Porter*, 542 F.3d 1088, 1093 (5th Cir. 2008). A refusal to give a requested instruction constitutes reversible error only if such instruction: "(1) is a substantively correct statement of the law, (2) is not substantially covered in the charge as a whole, *and* (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the defendant's ability to present a given defense." *Id.* (citing *United States v. Jobe*, 101 F.3d 1046, 1059 (5th Cir. 1996)). It is within a trial judge's discretion to deny a jury instruction if the instruction sought fails to meet any one of these elements. *Id.* The district court's instructions will be affirmed if "the court's

---

[1] The district court instructed the jury:

> "By means of intimidation" means to say or do something in such a way that a person of ordinary sensibilities hearing or seeing such thing would be fearful of bodily harm. It is not necessary to prove that the alleged victim was actually frightened, and neither is it necessary to show that the behavior of the defendant was so violent that it was likely to cause terror, panic, or hysteria. However, a taking would not be by "means of intimidation" if the fear, if any, resulted from the alleged victim's own timidity rather than some intimidating conduct on the part of the defendant. The essence of the offense is the taking of money or property accompanied by intentional, intimidating behavior on the part of the defendant.

charge, as a whole, is a correct statement of the law and . . . clearly instructs jurors as to the principles of the law applicable to the factual issues confronting them." *United States v. Spalding*, 894 F.3d 173, 187 (5th Cir. 2018) (quoting *United States v. Kay*, 513 F.3d 432, 446 (5th Cir. 2007)).

On appeal, McLaughlin argues that the district court erred because his requested instruction accurately states the law as clarified by this court in *United States v. Brewer*, 848 F.3d 711 (5th Cir. 2017). Further, McLaughlin claims that the pattern jury instruction used by the district court was insufficient because not merely fear, but a threat of force is required by the bank robbery statute. Moreover, McLaughlin contends that the court not only denied his request, it directly called the issue to the jury's attention and effectively instructed the jury that the use of force was irrelevant to its decision when it directed the jury to strike through the words "force, violence or," in the definition of the crime, 18 U.S.C. § 2113(a). Finally, McLaughlin asserts that the instruction was critical in his case, urging us to vacate all four counts of conviction.

The district court did not err in refusing to give McLaughlin's proffered jury instruction. McLaughlin's challenge instantly fails because his proposed jury instruction is not an accurate statement of law. *See Russell v. Plano Bank & Trust*, 130 F.3d 715, 719 (5th Cir. 1997) ("Where a party argues on appeal that the district court erred in refusing to give a proffered jury instruction, that party must show as a threshold matter that the proposed instruction correctly stated the law.") (internal quotation and citation omitted). The use of force is not necessary to prove robbery by intimidation; rather, the use of force is an alternative method of proving bank robbery under § 2113(a), which was not alleged in this case. *See United States v. Higdon*, 832 F.2d 312, 314 (5th Cir. 1987) ("The requirement of a taking 'by force and violence, or by intimidation'

under section 2113(a) is disjunctive. The government must prove only 'force and violence' or 'intimidation' to establish its case.").

Nor does McLaughlin's proposed jury instruction accurately reproduce the holding in *United States v. Brewer*—that federal bank robbery in violation of 18 U.S.C. § 2113(a) categorically qualifies as a crime of violence under U.S.S.G. § 4B1.2(a)(1) because robbery by intimidation, the "least culpable conduct" under the statute, requires at least an *implicit* threat to use force. 848 F.3d 711, 714–16 (5th Cir. 2017). The *Brewer* court reaffirmed that an express threat to use force is not required for a conviction of robbery by intimidation. *See id.* at 715. McLaughlin's omission of the word "implicit"—arguably the single most important word in the court's holding—without further qualifying the type of threat of force required misstates the law and would have misled the jury.

Moreover, the district court's definition of taking by intimidation accurately encapsulates the Fifth Circuit Pattern Jury Instruction (Criminal) § 2.80A (2015), and is further supported by our decision in *United States v. Higdon*. 832 F.2d 312, 315 (5th Cir. 1987) ("[I]ntimidation results when one individual acts in a manner that is reasonably calculated to put another in fear. . . . [A] taking by intimidation under section 2113(a) occurs when an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts."). "It is well-settled that a district court does not err by giving a charge that tracks this Circuit's pattern jury instructions and that is a correct statement of the law." *United States v. Whitfield*, 590 F.3d 325, 354 (5th Cir. 2009) (citing *United States v. Turner*, 960 F.2d 461, 464 (5th Cir. 1992)).

Finally, we reject McLaughlin's related assertion that the jury was misled regarding the requirement of an implicit threat of force when the district court directed the jury to strike through the words "force and violence,

or" in the written jury instructions defining bank robbery under 18 U.S.C. § 2113(a). Because McLaughlin failed to assert an objection before the district court, this unpreserved issue is reviewed for plain error. *See United States v. Sellers*, 926 F.2d 410, 417 (5th Cir. 1991). This argument fails for several reasons. First, the statute is disjunctive: section 2113(a) requires a taking "by force and violence, *or* by intimidation." 18 U.S.C. § 2113(a) (emphasis added). "The government must prove only 'force and violence' or 'intimidation' to establish its case." *Higdon*, 832 F.2d at 314.

Second, the record indicates that the district court instructed the jury to strike these words to reflect the superseding indictment, which charged McLaughlin with multiple counts of robbery by intimidation, not robbery by force or violence. Moreover, the district court judge clarified to the jury his reason for the modification: "It is true that Title 18, 2113, makes it a crime for anyone to take from a person by force, violence, or intimidation any money, et cetera, but that's not alleged in this case. So I don't want you to be confused between a statement of what the statute is and the later presentation of the three elements." Therefore, the district court properly adapted the instruction to the allegations of the indictment. *See United States v. Bizzard*, 615 F.2d 1080, 1081–82 (5th Cir. 1980). Taken as a whole, we are satisfied that the district court correctly instructed the jurors on the law. *See United States v. Pace*, 10 F.3d 1106, 1121 (5th Cir. 1993).

For these reasons, the district court did not abuse its broad discretion in refusing McLaughlin's jury instruction.

B. *Government's Exhibit 83 - Photograph of McLaughlin's Left Ear*

Next, McLaughlin challenges the district court's admittance into evidence Government's Exhibit 83, a photograph of his left ear, which he argues should have been excluded because it violated the court's discovery order and did not give the defense fair notice. It is within the sound discretion

of the district court whether or not to impose sanctions for a discovery violation. *See United States v. Dvorin,* 817 F.3d 438, 453 (5th Cir. 2016). In making this determination, district courts should consider: "(1) the reasons why disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the feasibility of curing such prejudice with a continuance of the trial; and (4) any other relevant circumstances." *Id.* (quoting *United States v. Garrett*, 238 F.3d 293, 298 (5th Cir. 2000)). "Any sanction imposed should be the least severe penalty necessary to ensure compliance with the court's discovery orders." *Id.* A district court's determination not to impose sanctions is reviewed for abuse of discretion. *Id.* "The standard of review for discovery matters is steep. We review alleged errors in the administration of discovery rules under an abuse of discretion standard and will not reverse on that basis unless a defendant establishes prejudice to his substantial rights." *United States v. Holmes*, 406 F.3d 337, 357 (5th Cir. 2005).

We affirm the district court's admission of Government's Exhibit 83.[2] The exhibit at issue is a photograph of McLaughlin's left ear that was produced eight days before trial. *See United States v. Bentley*, 875 F.2d 1114, 1118 (5th Cir. 1989) (affirming the district court's refusal to exclude evidence as a sanction for the government's untimely disclosure of evidence the night before trial). The district court did not find, nor is there any indication in the record, that the Government's failure to disclose the photograph sooner was intentional or in bad faith. *See Dvorin*, 817 F.3d at 453. In fact, McLaughlin concedes that there is no evidence that the Government intentionally produced the exhibit late; rather, the Government provided the photograph to defense counsel the same day it was taken. McLaughlin did not request a continuance upon receiving the photograph nor did McLaughlin reassert his objection to the

---

[2] McLaughlin did not further advance this challenge at oral argument.

exhibit at trial. Furthermore, the photograph is of McLaughlin's ear, which he *inevitably* brought with him to court, and is not alleged to be an inaccurate or modified depiction. Thus, the Government could have simply pointed to McLaughlin's ear in the courtroom. *See, e.g.*, *United States v. Weeks*, 919 F.2d 248, 253 (5th Cir. 1990) (referring to a photograph of the defendant as a "physical demonstration"). Considering these facts, the district court did not abuse its discretion in declining to exclude the photograph or impose sanctions.

Equally fatal to his argument on appeal, McLaughlin failed to make a specific showing that the tardiness of the disclosure prejudiced his substantial rights. Moreover, although it is uncontroverted that the Government relied heavily on Exhibit 83 in its closing argument, the Government did not solely rely on the ear identification to prove McLaughlin's guilt—the record contains surveillance photographs of McLaughlin's entire face, testimony of numerous bank tellers, as well as other corroborating, incriminating physical evidence. McLaughlin has not shown that the photograph was inadmissible or that any alleged discovery violation by the Government necessitated the exclusion of the photograph, the "most extreme sanction possible." *See Bentley*, 875 F.2d at 1118; *see also United States v. Sarcinelli*, 667 F.2d 5, 7 (5th Cir. 1982) (reversing the district court's exclusion of evidence for prosecutor's failure to timely comply with the discovery orders because a less severe sanction could have been imposed). Thus, the district court did not abuse its discretion in allowing into evidence Government's Exhibit 83.

McLaughlin's assertion that he was denied an opportunity to be heard is meritless. The district court considered the essence of the argument now presented on appeal when it overruled McLaughlin's preliminary objection to the photograph.

No. 17-10915

C. *Denial of McLaughlin's Motion to Suppress*

In his third argument on appeal, McLaughlin contends that the district court improperly denied his motion to suppress the robbery note that he claims was discovered during an unlawful search of an envelope he was carrying at the time of his arrest.[3] When reviewing a district court's ruling on a motion to suppress, we review factual findings for clear error and legal conclusions de novo. *United States v. Ortega,* 854 F.3d 818, 825 (5th Cir. 2017). "Factual findings are clearly erroneous only if a review of the record leaves this Court with a 'definite and firm conviction that a mistake has been committed.'" *United States v. Hearn*, 563 F.3d 95, 101 (5th Cir. 2009) (quoting *United States v. Hernandez*, 279 F.3d 302, 306 (5th Cir. 2002)). The evidence is viewed "in the light most favorable to the prevailing party," here the Government. *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005). Our review is particularly deferential "where a district court's denial of a suppression motion is based on live oral testimony . . . because the judge had the opportunity to observe the demeanor of the witnesses." *Id.* Such deference applies to our review, as the district court based its conclusion on its finding that Officer Dallas Connor's recitation of events at the suppression hearing was credible. The district court's ruling "should be upheld if there is any reasonable view of the evidence to support it." *United States v. Gonzalez*, 190 F.3d 668, 671 (5th Cir. 1999) (internal quotation marks and citation omitted).

McLaughlin argues that the robbery note was inadmissible because it was recovered during a warrantless search and neither of the warrant exceptions presented by the Government and ultimately relied on by the district court—search incident to arrest and inventory search—is applicable. "Warrantless searches are per se unreasonable under the Fourth Amendment,

---

[3] The note read: "This is bank Robber [sic] give me Twenties Fifties hundreds."

9

subject to a few specific exceptions." *United States v. Mata*, 517 F.3d 279, 284 (5th Cir. 2008). A search incident to arrest is a reasonable search permitted by the Fourth Amendment that does not require a search warrant. *Chimel v. California*, 395 U.S. 752, 762–63 (1969). Incident to a lawful arrest, police may search the arrestee's person and "the area within his immediate control— . . . the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 763. The search incident to arrest exception does not extend to a search that is remote in time or place from the arrest. *United States v. Chadwick*, 433 U.S. 1, 15 (1977), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991).

In conducting a search incident to arrest, officers may search the arrestee himself, as well as certain containers that were located either on the arrestee's person or within his reach at the time of his arrest, provided the search is contemporaneous with the arrest. *See United States v. Robinson*, 414 U.S. 218, 235–36 (1973) (upholding search of closed cigarette package on arrestee's person); *see also United States v. Johnson*, 846 F.2d 279, 282 (5th Cir. 1988) (per curiam). *But see Riley v. California*, 134 S. Ct. 2473, 2485 (2014) (declining to extend the search incident to arrest exception as applied in *Robinson* to searches of data on an arrestee's cell phone). "For searches which are incident to arrest we review de novo the application of the proper legal standard to the established facts." *United States v. Johnson*, 18 F.3d 293, 294 (5th Cir. 1994). A search incident to arrest must be objectively reasonable. *Robinson*, 414 U.S. at 236.

McLaughlin argues that the search of the envelope containing the robbery note was not incident to arrest because the officer searched the envelope and seized the robbery note when McLaughlin was handcuffed and beyond reaching distance. McLaughlin argues that even if the officers had a right to search the envelope for contraband and weapons, they were prohibited

from reading the contents of the envelope, which he claims was predominately marked as containing medical records, attempting to analogize *Riley v. California*. 134 S. Ct. at 2485 (holding that the search incident to arrest exception does not apply to the contents of an arrestee's cell phone).

The district court concluded that the search was lawful and the robbery note was legally admissible, finding that Officer Connor conducted the search of the unsealed envelope—which was removed from McLaughlin's person at the time of his arrest—in good faith and contemporaneous with and incident to McLaughlin's lawful arrest. We agree. There is no dispute regarding the legality of McLaughlin's arrest, which was executed pursuant to an arrest warrant for robbery. When he was arrested, McLaughlin had just exited a convenience store and was carrying an envelope underneath his arm. At the suppression hearing, Officer Connor testified that the strip of glue on the envelope had never been moistened, and it did not visually appear to ever have been sealed. Considering Officer Connor's testimony and upon its own examination of the envelope, the district court conclusively found that the envelope was unsealed and that the unsealed envelope was held close enough to McLaughlin's person to justify a search incident to arrest.

Additionally, the search was prompt and close to the point of McLaughlin's arrest. Less than five minutes after McLaughlin was handcuffed, Officer Connor searched the unsealed envelope (an open container) for weapons, contraband, and identification information. Officer Connor testified that she first searched the envelope within a couple of minutes of McLaughlin's arrest, prior to McLaughlin being placed in the police car. McLaughlin's testimony that he was inside of the patrol car when he saw Officer Connor search the envelope is not definitively inconsistent. McLaughlin admitted that he was not fixated on Officer Connor and that she could have previously opened the envelope without him seeing. Officer Connor further

testified at the suppression hearing that she had been informed that McLaughlin—a suspect in numerous bank robberies, including two robberies that occurred that day—had fled from police days earlier and that a firearm was recovered during that pursuit. Officer Connor noted, based on her 24 years of experience as a police officer, that the envelope was large enough to contain a weapon.

When looking inside the envelope, Officer Connor discovered and read the bank robbery note. McLaughlin correctly observes that the Government failed to show the spatial distance between McLaughlin and the envelope and that Officer Connor was not concerned for her safety at the time she read the note. However, these facts are of no moment given that McLaughlin was carrying the unsealed envelope under his arm at the time of his arrest and that the search was conducted at the scene of the arrest (a public area) only moments after McLaughlin's arrest. *See Robinson*, 414 U.S. at 235–36; *see also Riley,* 134 S. Ct. at 2484 (discussing *Robinson*, the only Supreme Court decision applying *Chimel's* search incident to arrest analysis to a search of an item found on the arrestee's person: "[T]he Court did not draw a line between a search of Robinson's person and a further examination of the cigarette pack found during that search. It merely noted that, '[h]aving in the course of a lawful search come upon the . . . package of cigarettes, [the officer] was entitled to inspect it.'") (quoting *Robinson*, 414 U.S. at 236).

Accordingly, the district court did not err in finding that the search of the unsealed envelope was a lawful search incident to arrest.[4] We therefore affirm the district court's denial of McLaughlin's motion to suppress.

---

[4] McLaughlin's reliance on *Riley* and implausible attempt to compare the contents of an envelope to the contents of a cell phone is wholly unfounded. Such a comparison was unequivocally rejected by the Supreme Court in *Riley*: "Cell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person." *Riley*, 134 S. Ct. at 2489. The Court specifically differentiated the privacy concerns

No. 17-10915

Having concluded that the search was reasonable as a search incident to arrest, we need not decide if this was also a valid inventory search.[5]

D. *Aggravating Role Sentencing Enhancement*

McLaughlin argues that the district court erroneously applied a two-level enhancement in counts five and six for his aggravating role as an "organizer, leader, manager, or supervisor."[6] He objected to the sentencing enhancement, preserving this issue for appeal. We review the district court's application of the Sentencing Guidelines de novo and its factual findings for clear error. *United States v. Ochoa-Gomez*, 777 F.3d 278, 281 (5th Cir. 2015). The determination that McLaughlin held an aggravating role under § 3B1.1(c) is a factual finding reviewed for clear error. *Id.* (citing *United States v. Gonzales*, 436 F.3d 560, 584 (5th Cir. 2006)). There is no clear error if the district court's finding is "plausible in light of the record read as a whole." *United States v. Bowen*, 818 F.3d 179, 192 (5th Cir. 2016) (citation omitted). A finding of fact is clearly erroneous "only if, based on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks and citation omitted).

---

of a cell phone from those implicated by the search of a cigarette pack, a wallet, or purse. *Id.* The degree of invasion of privacy is infinitely higher with a cell phone (i.e., immense storage capacity), while the likelihood of concealing a weapon in a cell phone is much lower than the envelope at issue. *See id.* Finally, contrary to McLaughlin's assertions, it was not readily apparent that the envelope seized *during his arrest* contained medical documents. "The search incident to arrest exception rests not only on the heightened government interests at stake in a volatile arrest situation, but also on an arrestee's reduced privacy interests upon being taken into police custody." *Id.* at 2488. Thus, McLaughlin's heightened privacy interest argument fails.

[5] During oral argument, Appellee emphasized the validity of the search as a search incident to arrest.

[6] Based on a multiple count adjustment, McLaughlin's total offense level was 33 and his criminal history was classified as a category II, resulting in a guideline range of 151 to 188 months imprisonment. Absent the aggravating role enhancement, McLaughlin's sentencing guideline range would have been 135 to 168 months imprisonment. *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table).

No. 17-10915

Pursuant to Section 3B1.1(c) of the Sentencing Guidelines, a defendant's offense level is increased by two levels if the defendant was "an organizer, leader, manager, *or* supervisor in any criminal activity." U.S.S.G. § 3B1.1(c) (emphasis added). In distinguishing a leadership or organizational role from one of mere management or supervision, courts consider the following factors:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*Id.* at cmt. n.4.[7] Although this distinction is unnecessary under § 3B1.1(c), the factors are instructive in determining whether McLaughlin held an aggravating role in the offense. To warrant an adjustment, a defendant must be the organizer, leader, manager, or supervisor of at least one other participant.[8] U.S.S.G. § 3B1.1 cmt. n.2; *accord Ochoa-Gomez*, 777 F.3d at 282. A "participant" is defined as "a person who is criminally responsible for the commission of the offense,[9] but need not have been convicted." U.S.S.G. § 3B1.1(c) cmt. n.1. "All that is required is that the person participate knowingly in some part of the criminal enterprise." *United States v. Glinsey*, 209 F.3d 386, 396 (5th Cir. 2000) (citing *United States v. Boutte*, 13 F.3d 855, 860 (5th Cir. 1994)).

---

[7] "The application notes accompanying a Guideline generally bind federal courts unless they are inconsistent with the text of the Guideline." *United States v. Ochoa-Gomez*, 777 F.3d 278, 282 (5th Cir. 2015).

[8] An aggravating role adjustment is applicable, even where a defendant did not exercise control over another participant, if he exercised management responsibility over the property, assets, or activities of a criminal organization. *United States v. Delgado*, 672 F.3d 320, 345 (5th Cir. 2012) (en banc), *cert. denied*, 568 U.S. 978 (2012).

[9] The term "offense" includes the contours of the underlying scheme, which is broader than the offense charged. *United States v. Wilder*, 15 F.3d 1292, 1299 (5th Cir. 1994).

14

No. 17-10915

On appeal, McLaughlin argues that the district court erred by imposing the aggravating role enhancement because (1) there was insufficient evidence that he was an organizer, leader, manager, or supervisor of at least one participant; and (2) the district court applied the incorrect legal standard for assessing the criminal responsibility of Aldenishae Calton (Calton), who he contends is not a "participant" as defined in U.S.S.G. § 3B1.1 since she did not commit the underlying crime and did not have actual knowledge of the bank robberies.

According to the PSR, McLaughlin acted as a leader, organizer, manager, or supervisor of at least one participant in counts five and six based on the following:

> McLaughlin recruited Calton and Glover into the offense.[10] McLaughlin utilized Calton to drive him to at least two banks on May 27, 2016, where he committed robberies. McLaughlin told Calton which banks to go to, and provided Calton with a portion of the proceeds after each robbery. Calton was found to be in possession of $506 when McLaughlin was arrested. Calton is considered a participant in the offense, pursuant to the definition at USSG §3B1.1, comment (n.1). In considering the factors at USSG § 3B1.1, comment (n.4), McLaughlin was in charge of organizing and directing Calton, claimed the larger share of the fruits of the crime, and was the primary participant in the commission of the offense.

Overruling McLaughlin's objection, the district court adopted the PSR as its findings of fact and adjusted McLaughlin's offense level upward based on his aggravating role in counts five and six. *See United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (A PSR generally bears sufficient indicia of reliability). A review of the record shows that, because the district court's finding is

---

[10] McLaughlin contests the district court's adoption of this finding, pointing to Calton's testimony that she was recruited by Marquita Glover. This does not affect our conclusion that the district court did not err in imposing the aggravating role sentencing enhancement in McLaughlin's guideline calculation.

plausible in light of the record as a whole, it did not clearly err in imposing the two-level aggravating role enhancement. McLaughlin's assertion that there was insufficient evidence upon which to base the aggravating role enhancement is unavailing. McLaughlin was convicted of four counts of robbery by intimidation, including counts five and six. It is uncontroverted that as the bank robber, McLaughlin exercised extensive participation and decision-making in the commission of the offense, while Marquita Glover (Glover) and Calton parked and waited in the car. *See* § 3B1.1 cmt. n.4.

Further evidence supports that McLaughlin acted as an organizer, leader, manager, or supervisor of Calton in the criminal activity: Calton drove McLaughlin to the location of the bank robberies in counts five and six; McLaughlin directed Calton to drive to the Kroger's store on Altamesa, the location of the bank robbery in count five; and McLaughlin had control of the stolen cash and directly paid Calton after three of the bank robberies. *See id.*; *United States v. Gordon*, 248 F. App'x 521, 525 (5th Cir. 2007) (per curiam). Finally, the record supports the district court's finding by a preponderance of the evidence that McLaughlin claimed the majority of the criminal proceeds. Specifically, the crime scene officer, Jose Palomares, recovered a second FedEx envelope from McLaughlin, Glover, and Calton's hotel room, which contained $3,200 of the $3,796 recovered that day (reflecting the bill denominations as demanded in the robbery note), along with optical paperwork that belonged to McLaughlin. These facts are consistent with the district court's finding that McLaughlin held an aggravating role within the meaning of Section 3B1.1(c) in counts five and six.

McLaughlin's second challenge that the enhancement was erroneous because Calton does not qualify as a participant and lacked the knowledge for participant status is equally unconvincing. McLaughlin erroneously asserts that Calton cannot qualify as a participant because she was not criminally

responsible for the bank robberies. To the contrary, a participant need only "participate knowingly in some part of the criminal enterprise." *Glinsey*, 209 F.3d at 396. At sentencing, the district court found that the evidence at trial established that Calton was a participant for purposes of the aggravating role enhancement, finding that she had sufficient knowledge of the offense to make her criminally responsible. Although Calton testified that she "didn't know" whether something illegal was going on, the record plausibly supports the district judge's deduction that the totality of the circumstances proved that Calton had the requisite knowledge that something "nefarious was going on, and probably, even specific like there [were] bank robberies happening."

Specifically, Calton testified at trial that she knew Glover and McLaughlin needed money to get Glover's boyfriend, Timothy Lewis, out of jail and that she would be paid to drive them.[11] Calton testified that she drove Glover and McLaughlin to Wal-Mart on East Berry, Kroger on Altamesa Boulevard, and Wal-Mart on Vickery Boulevard where McLaughlin would get out of Calton's Nissan Altima with a FedEx envelope, enter the store, and return with money.[12] McLaughlin exited each store with cash and paid Calton a portion of the criminal proceeds at least three different times, totaling $506.00 over a span of only a few hours. Finally, in Calton's interview with the FBI on the day of McLaughlin's arrest, Calton admitted that she knew that McLaughlin was unlawfully obtaining money from the banks that she drove him to that day. Accordingly, Calton qualifies as a participant under the enhancement.

---

[11] On cross examination, defense counsel stated to Calton, "If what you said is what happened, you basically just told law enforcement under oath that you're the getaway driver."

[12] Calton also drove McLaughlin and Glover to Wal-Mart in Waco where he got out with the FedEx envelope, but did not return with money because the "line was too long."

Therefore, because its finding is "plausible in light of the record as a whole," the district court's imposition of the Section 3B1.1(c) aggravating role enhancement was not clearly erroneous. *See Bowen*, 818 F.3d at 192.

### III.    CONCLUSION

For the foregoing reasons, McLaughlin's conviction and sentence are AFFIRMED.